ACCEPTED
04-12-00630-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/21/2015 11:21:39 AM
KEITH HOTTLE
CLERK

DARYL L. MOORE‡
**DARYL L. MOORE, P.C.**
1005 Heights Boulevard
Houston, Texas 77008
713.529.0048 Telephone
713.529.2498 Facsimile

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

5/21/2015 11:21:39 AM

KEITH E. HOTTLE
Clerk

May 21, 2015

Mr. Keith E. Hottle, Clerk
Fourth Court of Appeals
Cadena-Reeves Justice Center
300 Dolorosa, Suite 3200
San Antonio, Texas 78205

> Re: No. 04-12-00630-CV
> *The Huff Energy Fund, L.P., et al. v. Longview Energy Company*.

Dear Mr. Hottle:

This case is currently set for oral argument before the en-banc Court on June 3, 2015. On May 8, 2015, the Texas Supreme Court issued an opinion on cross-petitions for writ of mandamus. Because that opinion may be helpful to the members of the Court and relevant to the issues on appeal, Appellants have attached the Supreme Court's opinion for this Court's consideration.

Respectfully submitted,

/s/ Daryl L. Moore
Daryl L. Moore

cc: All counsel of record
(Via electronic service/notice)

---

‡BOARD CERTIFIED, CIVIL APPELLATE LAW, TEXAS BOARD OF LEGAL SPECIALIZATION

# IN THE SUPREME COURT OF TEXAS

═════════════
No. 14-0175
═════════════

IN RE LONGVIEW ENERGY COMPANY, RELATOR

*- and -*

IN RE HUFF ENERGY FUND, L.P. AND RILEY-HUFF
ENERGY GROUP, LLC, CROSS-RELATORS

═══════════════════════════════════════════════
ON PETITIONS FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════

**Argued February 25, 2015**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

To suspend execution of a money judgment on appeal, a judgment debtor must post security as required by Section 52.006 of the Texas Civil Practice and Remedies Code and Rule 24 of the Texas Rules of Appellate Procedure. The security must cover "compensatory damages", interest, and costs, but is subject to caps.[1] In the case underlying this original proceeding, the trial court applied the caps separately to each of four jointly and severally liable defendants. The court of appeals disagreed and applied the caps to the judgment as a whole.[2] We do not reach the issue because we

---

[1] TEX. CIV. PRAC. & REM. CODE § 52.006(a), (b), (c).

[2] ___ S.W.3d ___ (Tex. App.—San Antonio 2014) (on motion for review of orders requiring security and granting post-judgment discovery under Texas Rule of Appellate Procedure 24.4).

conclude that the money judgment award at issue is not for "compensatory damages". We also conclude that the trial court did not abuse its discretion in ordering post-judgment discovery. Accordingly, we deny mandamus relief.

**I**

Longview Energy Company is an independent business engaged in the exploration, development, and production of oil and gas. In 2009, The Huff Energy Fund, L.P., a private equity investment fund, held approximately 39% of Longview's stock and two seats on Longview's board of directors, occupied by two of Huff Energy's principals, William R. Huff and Rick D'Angelo. Notwithstanding this interrelationship between the two entities, Huff Energy formed Riley-Huff Energy Group, LLC, to compete with Longview.

Longview, on learning that prospects that it was pursuing in the south Texas Eagle Ford shale were being acquired by Riley-Huff, sued Huff and D'Angelo for breach of fiduciary duty. Longview also sued Huff Energy, its general partner, WRH Energy Partners, LLC, and Riley-Huff. The jury found that Huff and D'Angelo breached their fiduciary duty, that Huff Energy and Riley-Huff knowingly participated, and that as a result Riley-Huff "wrongfully obtain[ed] assets in the Eagle Ford shale".

Longview sought disgorgement of the defendants' unjust enrichment but did not seek damages. With respect to recovery, Longview requested only four jury findings, all concerning the Eagle Ford shale assets Riley-Huff acquired as a result of D'Angelo's or Huff's breach of fiduciary duty. The jury found that Riley-Huff had paid $24.5 million for assets with a market value of $42

2

million, had spent $127 million to develop them, and had received $120 million in past production revenue.

The trial court awarded Longview a constructive trust over almost all Riley-Huff's Eagle Ford shale assets and future production revenues net of royalties and production taxes[3]—interests in some 46,000 acres total—and ordered Riley-Huff to convey them to Longview within thirty days. Separately, the court also awarded Longview, against all five defendants jointly and severally, the same future net production revenues covered by the constructive trust "and an additional $95,500,000.00." The first judgment the court rendered described the $95.5 million as being "based on the jury's finding regarding the value of past-production revenues derived from the [Eagle Ford shale assets, $120 million,] minus the amount the jury found that the defendants paid to acquire [those assets, $24.5 million,]" but without credit for either the $127 million development costs found by the jury or the other production expenses. An amended judgment omitted this statement and gave no explanation for the monetary award.

The defendants appealed and together posted a $25 million bond as security to supersede enforcement of the judgment.[4] Longview moved in the trial court to require each of the five defendants to post security equal to the lesser of $25 million or 50% of the defendants' net worth.[5] The court granted the motion except as to Riley-Huff, ordering the increase in security required for

---

[3] The judgment excluded assets Riley-Huff had acquired in two specified transactions.

[4] *See* TEX. CIV. PRAC. & REM. CODE § 52.006(b).

[5] *Id.*

3

the other four defendants to supersede the judgment ("the security order").[6] The trial court also

ordered Huff Energy to produce on a monthly basis essentially all documents pertaining to the

operation of the Eagle Ford shale assets held by Riley-Huff ("the discovery order").

The defendants sought relief from the security and discovery orders by motion in the court

of appeals.[7] A divided court concluded that the defendants were together required to post only $25

million in security to supersede the judgment as to them all, as they had already done.[8] The court

rejected the defendants' argument that the discovery order was an abuse of discretion.[9] Accordingly,

the court of appeals granted Huff's motion in part, reversing the security order, and denied the

motion in part, as it sought reversal of the discovery order.[10]

Longview and the defendants—to whom we refer collectively as Huff—all petitioned this

Court for relief by mandamus, and we set the petitions for argument.[11]

---

[6] The court at first ordered that "to supersede the real property portion of the Amended Final Judgment, an additional bond in the sum of $116,178,541.00 is required." The court later vacated that order, finding that it would cause the defendants substantial economic harm. Riley-Huff argued that all revenue it received from the assets on which the judgment imposed a constructive trust should be used to maintain and develop those assets. The trial court required no further security of Riley-Huff. Longview does not seek relief from this ruling.

[7] Rule 24.4 of the Texas Rules of Appellate Procedure allows for review of the trial court's ruling by motion in the court of appeals under Rule 24, and for review of the court of appeals' ruling by petition for writ of mandamus in the Supreme Court.

[8] ___ S.W.3d ___ (Tex. App.—San Antonio 2014) (on motion for review of order requiring security and granting post-judgment discovery).

[9] *Id.* at ___.

[10] *Id.* at ___.

[11] 58 Tex. Sup. Ct. J. 228 (Jan. 30, 2015).

We consider first the parties' arguments relating to security for superseding the judgment, then turn to the discovery issues.

## II

## A

A money judgment creditor forced to await payment pending appeal can lose all hope of recovery to delay suffered in winning affirmance. And a judgment debtor required to pay in full pending appeal may find little solace in reversal. For both, vindication on appeal may be a Pyrrhic victory. The common law sided with the debtor; invoking the appellate court's jurisdiction served as supersedeas, suspending enforcement of the trial court's judgment.[12] But that rule encouraged appeals purely for delay, and the legal pendulum swung the other way.[13] Seventeenth century English statutes required a judgment debtor to provide security, not just for the amount of the judgment, but often for twice the amount of the judgment, guaranteeing payment of the judgment if affirmed.[14] This seems also to have been the prevailing view in the colonies[15] and was the law by statute in Texas

---

[12] *Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 381 (1883).

[13] *Id.* at 381–382.

[14] *Id.* (citing 3 James I c. 8 (1605), and 13 Car. II c. 2 (1661), as enlarged by 16 & 17 Car. II c. 8 (1664).

[15] *Id.*

5

from statehood[16] until the adoption of the Texas Rules of Civil Procedure in 1940, when the pendulum began to swing back.

Exercising its new rule-making authority,[17] the Court moved the substance of the statutory provision governing supersedeas to Rule 364(a) of the Rules of Civil Procedure but reduced the amount of security required from double the amount of the judgment, plus interest and costs, to just the amount of the judgment, plus interest and costs.[18] In 1984, the Court revised Rule 364 and divided subsection (a) into subsections (a) and (b).[19]

Then Pennzoil Company obtained a $10.53 billion judgment against Texaco, Inc.[20] In 1987, Texaco, having been unable to post the more than $13 billion in security required by Rule 364, and having failed in its federal-law challenge to the state-law requirement,[21] filed for bankruptcy

---

[16] Act of May 13, 1846, 1st Leg., R.S., §§ 136, 138, 1846 Tex. Gen. Laws 363, 399, *reprinted in* 2 H.P.N. Gammel*, The Laws of Texas 1822–1897*, at 1669, 1705 (Austin, Gammel Book Co. 1898) (requiring for appeal, or to avoid sequestration of personal property, a bond for double the amount of the debt or damages); Act approved April 13, 1892, 22d Leg., 1st C.S., ch. 17, § 1, art. 1404, 1892 Tex. Gen. Laws 42, 44, *reprinted in* 2 H.P.N. Gammel*, The Laws of Texas 1822–1897*, 406, 408 (Austin, Gammel Book Co. 1898) (amending articles 1400 and 1404 and requiring, to appeal or suspend execution of a judgment on appeal, a bond for at least double the amount of the judgment, interests, and costs). These requirements were also officially codified in TEX. REV. CIV. STAT. art. 1404 (1879), TEX. REV. CIV. STAT. arts. 1400, 1404 (1895), TEX. REV. CIV. STAT. arts. 2097, 2101 (1911), and TEX. REV. CIV. STAT. arts. 2265, 2270 (1925).

[17] Act of May 15, 1939, 46th Leg., R.S., ch. 25, § 2, 1939 Tex. Gen. Laws 201, 202 (repealed and recodified in TEX. GOV'T CODE § 22.004).

[18] 136 Tex. 442, 553 (1940).

[19] 661–662 S.W.2d (Texas Cases) xxix, lxxxvii (1984).

[20] *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

[21] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

protection to stop Pennzoil from enforcing its judgment pending final appeals to this Court and the United States Supreme Court.[22] A year later the case settled.

In the wake of *Texaco v. Pennzoil*, the Legislature re-entered the realm of supersedeas, enacting Chapter 52 of the Civil Practice and Remedies Code.[23] The statute replaced the simple rigidity of Rule 364, which by then had become Rule 47 of the Rules of Appellate Procedure, with trial court discretion reviewable on appeal. Section 52.002 authorized the trial court to reduce the amount necessary to supersede certain judgments on appeal if it found that "the lesser amount would not substantially decrease the degree to which a judgment creditor's recovery under the judgment would be secured" and that "setting the security at an amount equal to the amount of the judgment, interest, and costs would cause irreparable harm to the judgment debtor".[24] Sections 52.003 and 52.004 provided for appellate review of the trial court's decision, both for sufficiency and for excessiveness.[25] Section 52.005 made the new provisions controlling over Rule 47, now Rule 24 of the Rules of Appellate Procedure.

---

[22] *Texaco, Inc. v. Pennzoil Co.*, 748 S.W.2d 631 (Tex. App.—Houston [1st Dist.] 1988) (per curiam) (granting motion to dismiss by agreement).

[23] Act of June 16, 1989, 71st Leg., R.S., ch 1178, § 1, 1989 Tex. Gen. Laws 4813, 4813–14, *repealed in part by* Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 7.03, 2003 Tex. Gen. Laws 847, 863 (current version at TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.005–.006).

[24] *Id.*

[25] *Id.*

In 2003, the Legislature moved further toward protecting money judgment debtors and the right of appeal.[26] As part of HB 4, a major tort reform package, the Legislature repealed Sections 52.002, 52.003, and 52.004, replacing them with Section 52.006. Section 52.006 requires security only for compensatory damages, interest, and costs; imposes an absolute cap; and gives trial courts still more latitude in reducing further the amount of security required. Section 52.006 provides:

     (a)    Subject to Subsection (b), when a judgment is for money, the amount of security must equal the sum of:

     (1)    the amount of compensatory damages awarded in the judgment;

     (2)    interest for the estimated duration of the appeal; and

     (3)    costs awarded in the judgment.

     (b)    Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of:

     (1)    50 percent of the judgment debtor's net worth; or

     (2)    $25 million.

     (c)    On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post security in an amount required under Subsection (a) or (b), the trial court shall lower the amount of the security to an amount that will not cause the judgment debtor substantial economic harm.

     (d) An appellate court may review the amount of security as allowed under Rule 24, Texas Rules of Appellate Procedure, except that when a judgment is for

---

[26] *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 170 (Tex. 2013) ("House Bill 4 'reflect[ed] a new balance between the judgment creditor's right in the judgment and the dissipation of the judgment debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review.'") (quoting Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill 4*, 46 S. TEX. L. REV. 1035, 1038 (2005)).

money, the appellate court may not modify the amount of security to exceed the amount allowed under this section.

(e) Nothing in this section prevents a trial court from enjoining the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business.

We amended Rule 24.2 of the Rules of Appellate Procedure to track Section 52.006:

(a) Type of Judgment.

(1) For Recovery of Money. When the judgment is for money, the amount of the bond, deposit, or security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. But the amount must not exceed the lesser of:

(A) 50 percent of the judgment debtor's current net worth; or

(B) 25 million dollars.

\* \* \*

(b) Lesser Amount. The trial court must lower the amount of security required by (a) to an amount that will not cause the judgment debtor substantial economic harm if, after notice to all parties and a hearing, the court finds that posting a bond, deposit, or security in the amount required by (a) is likely to cause the judgment debtor substantial economic harm.

\* \* \*

(d) Injunction. The trial court may enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business.

The procedure for appellate review is in Rule 24.4.

These changes in supersedeas may be seen as more protective of debtors, consistent with deep, populist Texas traditions. They may also be seen as respecting the importance of the right to a meaningful appeal.[27] Either way, first the Court, and then the Legislature, have deliberately made supersedeas more easily available.

**B**

Huff contends that the judgment's monetary award of future production revenues, net of royalties and production taxes, and an additional $95.5 million, does not constitute "compensatory damages" within the meaning of Section 52.006(a)(1) and Rule 24(a)(1). Longview argues, and the court of appeals seems to have agreed, that the award is not punitive and therefore must be compensatory.

The award may well be punitive. If we can believe the trial court's withdrawn characterization of the $95.5 million in its initial judgment, then Longview was awarded *gross* past production revenues less asset acquisition costs, all as found by the jury ($120 million – $24.5 million = $95.5 million), plus future production revenues net only of royalties and taxes, not all production-related expenses. A judgment that makes the "defendant liable in excess of net gains[]

---

[27] *See* Elaine A. Carlson, *Tort Reform: Redefining the Role of the Court and the Jury*, 47 S. Tex. L. Rev. 245, 280 (2005) ("These changes to appellate security reform are intended to facilitate appellate access and provide relief to judgment debtors facing insolvency as the only option to avoid judgment execution or to those with a judgment so large that the cost of supersedeas, in the full amount of the judgment, would effectively inhibit their ability to appeal."); Elaine A. Carlson, *Mandatory Supersedeas Bond Requirements-A Denial of Due Process Rights?*, 39 Baylor L. Rev. 29, 49 (1987) (speaking to the pre-reform supersedeas framework and noting that "a mandatory supersedeas requirement in the amount of a money judgment to stay execution in some instances creates an unreasonable condition impairing the constitutional right of judicial access").

results in a punitive sanction that the law of restitution normally attempts to avoid."[28] Longview offers no reason why such an award is compensatory and not punitive.

If the trial court did not calculate the $95.5 million the way the court at first explained, then the number seems to have been pulled from thin air. Longview offers no explanation for what the figure represents. Longview argues that the award is nevertheless remedial and therefore compensatory. We cannot conclude that the award is compensatory when it cannot be explained. Furthermore, Longview does not explain how the award can be considered damages. In *In re Nalle Plastics Family Ltd. Partnership*, we held that attorney fees are not compensatory damages under Section 52.006(a)(1) and Rule 24(a)(1).[29] As we explained:

> While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages. Not every amount, even if compensatory, can be considered damages. Like attorney's fees, court costs make a claimant whole, as does pre-judgment interest. Yet it is clear that neither costs nor interest qualify as compensatory damages. Otherwise, there would be no need to list those amounts separately in the supersedeas bond statute.[30]

Explained or unexplained, compensatory or not, the award bears no resemblance to any recognized form of damages.

Longview argues that the award is disgorgement to remedy Huff's unjust enrichment. Disgorgement is an equitable forfeiture of benefits wrongfully obtained, as for example "when a

---

[28] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt. h (2011).

[29] 406 S.W.3d 168, 174 (Tex. 2013).

[30] *Id.* at 173. The Court, however, rejected the idea that attorney's fees can never be considered compensatory damages, noting that "[i]f the *underlying* suit concerns a claim for attorney fees as an element of damages, as with [a claim] for unpaid fees" then those fees may properly be included in a fact-finder's compensatory award. *Id.* at 175–176.

fiduciary agent usurps an opportunity properly belonging to a principal",[31] where "an agent divert[s] an opportunity from [a] principal or engage[s] in competition with the principal, [and] the agent . . . profit[s] or benefit[s] in some way",[32] and where "a person who renders service to another in a relationship of trust . . . breaches that trust".[33] The remedy discourages disloyalty and strengthens fiduciary relationships by "strip[ping] the defendant of a wrongful gain."[34] We have said that such equitable forfeiture "is not mainly compensatory . . . nor is it mainly punitive" and "cannot . . . be measured by . . . actual damages."[35] Disgorgement is compensatory in the same sense attorney fees, interest, and costs are, but it is not damages. Indeed, Longview has itself made clear that it sought disgorgement instead of damages, and did not request jury findings on damages, because it thought the Eagle Ford shale assets were undervalued.

In no sense can the monetary award in Longview's judgment be said to be compensatory damages, and Huff was not required to post security for those amounts. Section 52.006(a)(2) and Rule 24.2(a)(1) require security for interest, but only on compensatory damages.[36] The only other amount for which security must be given is costs, which are $66,645.00. We agree with the court of

[31] *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).

[32] *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002).

[33] *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999).

[34] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt. a (2011); *see also Burrow*, 997 S.W.2d at 238.

[35] *Burrow*, 997 S.W.2d at 240.

[36] *In re Corral-Lerma,* 451 S.W.3d 385, 387 (Tex. 2015).

appeals that Huff was entitled to reversal of the trial court's security order. We disagree that Huff was required to post security in the amount it did.

Having reached this conclusion, we need not consider whether the court of appeals correctly applied the caps on security under Section 52.006(b) and Rule 24.2(a)(1).

**III**

In connection with its motion to increase Huff's security to supersede the judgment, Longview moved for discovery of Huff's operation of the Eagle Ford shale assets under Rule 24.1(e), which states: "The trial court may make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause."[37] The trial court granted the motion, ordering Huff Energy to produce essentially all information concerning the operation of the assets over which the judgment imposed a constructive trust.[38] Huff argues that the trial court abused its discretion.

Huff argues that Rule 24.1(e) must be read in light of Rule 621a of the Texas Rules of Civil Procedure, which governs post-judgment discovery. Rule 621a allows discovery only "for the

---

[37] TEX. R. APP. P. 24.1(e).

[38] The trial court ordered Huff Energy to "produce, or cause to be produced, the following categories of documents pertaining to all wells or leases within the constructive trust in which Riley-Huff or [Huff Energy] holds an interest. 1. Production revenue statements; 2. Joint interest bills; 3. Records of payments made by Riley-Huff or [Huff Energy] to well operators and mineral owners for joint interest billings, royalties, and lease extension payments; 4. Well proposal letters, joint operating agreements, and authorizations for expenditures (AFE's) received from all operators proposing to include Riley-Huff or [Huff Energy] leaseholds in wells and all responses thereto; 5. Daily drilling and production reports; 6. Documents sufficient to reflect all offers and decisions to (i) participate in wells; (ii) pay, or refrain from paying, lease extension payments; (iii) enter into farm-out agreements, joint venture agreements, or purchase and sale agreements; (iv) make capital investments; and/or (v) enter into letters of intent; and 7. Monthly cash flow statements, budgets, lease expiration schedules, and balance sheets." The court ordered the documents to be produced on "a monthly basis for the duration of the appeal . . . [or if] generated on a quarterly or other periodic basis, . . . within 10 days of their creation."

purpose of obtaining information to aid in the enforcement" of a judgment that has not been superseded, and "for the purpose of obtaining information relevant to" Rule 24 motions. Huff contends that Rule 24.1(e) should not permit discovery not allowed under Rule 621a. But nothing in Rule 621a purports to limit Rule 24.1(e); to the contrary, Rule 621a permits discovery relevant to Rule 24 motions. The trial court found that requiring security to supersede the constructive trust portion of its judgment would work a substantial hardship on Riley-Huff and the operation of the Eagle Ford shale assets. Instead of a bond, the court gave Longview access to information regarding those operations to protect itself from any dissipation of assets while the appeal was pending. This was not an abuse of discretion.

Huff counters that the trial court had no evidence of any threat of dissipation of assets. But Longview was entitled to security to supersede the judgment without showing any such threat. The trial court was not required to insist on such a showing in providing discovery in lieu of security.

Huff asserts that the trial court's discovery order undermines the right to an effective appeal by requiring the ongoing production of documents. To quote Huff, "as a practical matter, the [discovery order] gives Longview free rein to continue seeking discovery as a means of coercing . . . settlement."[39] The trial court and the court of appeals both considered Huff's argument and concluded that the discovery order was reasonable. We are unable to find a reason to contradict them.

For these reasons, we conclude that the discovery order was not an abuse of discretion.

---

[39] Cross-Relators Brief on the Merits at 11–12.

\*   \*   \*   \*   \*

We agree with the court of appeals' ruling on Huff's motion under Rule 24.4, though with respect to the security order, for different reasons, as we have explained. Huff is entitled to supersede the money award in the judgment by posting security for costs. We also agree with the court of appeals that the discovery order was not an abuse of discretion. Accordingly, we deny relief to either Longview or Huff.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: May 8, 2015

15