

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00002-CV

ROBERT YORK PETTIT, JEFFREY YORK PETTIT,
INDIVIDUALLY AND AS TRUSTEE OF THE BIG HORN PHALANX TRUST,
JOSEPH AUSTIN PETTIT AND EMILY ANNE PETTIT COVEY, Appellants

V.

MARILYN EILEEN PETTIT TABOR, Appellee

On Appeal from the 8th District Court
Delta County, Texas
Trial Court No. 10985

Before Morriss, C.J., Burgess and Stevens, JJ.

ORDER

Robert York Pettit, Jeffrey York Pettit, individually and as trustee of the Big Horn Phalanx Trust, Joseph Austin Pettit, and Emily Anne Pettit Covey (collectively Pettit) moved this Court to review and overturn the trial court's order requiring that they post a $100,000.00 bond to supersede the underlying judgment. Pettit maintains that because the lion's share of the judgment is properly considered disgorgement for supersedeas bond purposes, the only amount subject to bond is the award of court costs plus interest, totaling $6,279.83. In the event the challenged awards are not properly classified as disgorgement, Pettit alternatively asks that the supersedeas bond be set within the range of $36,831.15 to $39,526.10. For the reasons stated below, we deny the requested relief.

## I. Background

As alleged below, Marilyn Eileen Pettit Tabor and her brother, Robert York Pettit, each owned a fifty percent undivided interest in two tracts of land and were joint signatories on a bank account intended to be used for maintenance of the land. Tabor alleged that after having told Robert that she was considering conveying her interest in the properties to her children because she had been sued regarding an old business transaction, Robert strongly encouraged her to deed her interests to him on a temporary basis, promising to reconvey the interests to Tabor on her request. Tabor deeded her interests in the subject property to Robert. She also—allegedly at Robert's urging—removed her name from a joint bank account with Robert containing $40,000.00.

2

Tabor alleged that Robert refused to reconvey the property interests and sued for their return, as well as for her share of the maintenance account.[1]

Following a bench trial, the trial court determined that Tabor's transfer of her undivided fifty percent interest and title to two tracts of real property to Pettit was void based on fraud and imposed a constructive trust on the property in favor of Tabor. The court further ordered Pettit to execute deeds to reconvey Tabor's property interests to her. Finally, the judgment awarded Tabor $20,000.00, representing her interest in the maintenance account, $50,000.00 in exemplary damages, $43,084.39 in attorney fees, and $5,924.37 in costs.

Pettit filed a motion to set a supersedeas bond, asking the trial court to set bond in the amount of $6,279.83, representing court costs plus interest for one year. Tabor responded, asking the trial court to set bond in accordance with Rule 24.2(a)(2)(A) of the Texas Rules of Appellate Procedure, with the bond representing at least the value of the interest's rent or revenue. Tabor claimed that because the rule only provides a floor for the bond amount, the trial court should set the bond at $525,934.27, representing one-half of the real property's market value, plus costs and interest.

Although no testimony was presented at the hearing on Pettit's motion to set a supersedeas bond, Pettit attached to his motion a document captioned "Lease Property Price Opinion for Jeffrey York Pettit, Trustee," relative to both tracts. The document was authored by Terry Driggers of Terry Driggers Realty Services, LLC, and was supported by county appraisal district tax records,

---

[1]In her petition, Tabor alleged that she and Robert had a confidential relationship and that Robert's actions constituted actual and/or constructive fraud. She asked for money damages, as well as a constructive trust.

including rental comparisons for the home situated on the Hunt County tract.[2] Driggers opined

that, with respect to the 224.4-acre tract in Hunt County, "[a]n option would be to lease the pasture

for $10–$12 an acre but knowing that a farmer would most likely want a longer term lease to

protect the investment they would make in fencing and clean-up." A second option, according to

Driggers, "would be to lease to 2–3 hunters which might pay $1000–$1200 a gun to hunt."

Driggers opined that this option "would generate around $2240 to $3000 a year."

Driggers stated that per the tax records, the 1,728 square-foot home on this tract was built

in 2000 with enclosed front and back porches totaling 540 square feet, a septic system, and no

central air or heat. According to Driggers, "This home . . . would easily rent in the Commerce area

because of the University. . . . To a single family, in my opinion, the home would have a rent value

of $1200 to $1500 a month." Finally, with respect to the seventy-acre Delta County tract,

Driggers stated that the land is currently leased for hunting, since it is heavily wooded.[3] "An

option would be to maybe add two hunters up to $1000 a gun for a possible $2000 extra a year

lease."

---

[2]At the hearing, Pettit relied on Driggers' opinions regarding the property interests' respective rental values. The trial court specifically asked Tabor if she had any dispute regarding the figures provided by Driggers as to rental value. Tabor voiced no objection to Driggers' opinions, stating, "I'm not going to dispute that, Your Honor." Tabor further stated that there was "no reason for [Driggers] to have to come testify." The trial court evidently considered Driggers' opinions in determining the amount of the bond. In its bond order, the trial court indicated that it considered "the Motion, Plaintiff's Response, Defendant's Reply, *the evidence presented* and the arguments of counsel." (Emphasis added).

[3]The record does not include the annual hunting lease revenue for this tract.

## II. Analysis

A money judgment may be superseded by a bond, deposit, or security equal to the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment, subject to certain limitations. *See* TEX. R. APP. P. 24.2(a)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006. To supersede a judgment for the recovery of an interest in real property, the amount of security "must be at least . . . the value of the property interest's rent or revenue." TEX. R. APP. P. 24.2(a)(2)(A); *see Wickliffe v. Tooley*, No. 05-15-00696-CV, 2015 WL 5013691, at *1 (Tex. App.—Dallas Aug. 25, 2015, no pet.) (mem. op.).

Under Rule 24.4 of the Texas Rules of Appellate Procedure, an appellate court may review, among other things, "the sufficiency or excessiveness of the amount of security" and "the trial court's exercise of discretion" in "order[ing] the amount and type of security." TEX. R. APP. P. 24.4(a)(1), (5), 24.3(a)(1). And, under Rule 24.4(d), an appellate court has discretion to modify a trial court's order on security. *See* TEX. R. APP. P. 24.4(d); *BP Am. Prod. Co. v. Red Deer Res., LLC*, No. 07-14-00032-CV, 2014 WL 3419496, at *2 (Tex. App.—Amarillo July 11, 2014, order) (per curiam). In the present case, the trial court awarded Tabor both monetary damages and real property interests. Consequently, we must evaluate the trial court's supersedeas calculations under both Rule 24.2(a)(1) and 24.2(a)(2).

"We review a trial court's determination of the amount of security required under an abuse of discretion standard." *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 510 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2016, mem. order) (citing *In re Longview Energy Co.*, 464 S.W.3d 353, 358 (Tex. 2015) (orig. proceeding)). Generally, "[t]he test for abuse of discretion is whether the

5

trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable." *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995). Because a trial court does not have "discretion in determining what the law is or applying the law to the facts[,] . . . a failure by the trial court to analyze or apply the law correctly . . . constitutes an abuse of discretion." *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 624 (Tex. 2005) (quoting *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding)).

## A. Supersedeas Bond Related to the Award of Property Interests

Pettit contends that because the trial court (1) found that the transfer of Tabor's real property interests to Pettit were void due to Pettit's fraud and (2) imposed a constructive trust on the real property in favor of Tabor, this remedy is for disgorgement. Pettit therefore contends that this award should not have been included in the trial court's supersedeas bond calculations. We disagree.

Pettit relies on *Longview Energy* in support of this proposition. In that case, Longview Energy sued minority shareholders, among others, for breach of fiduciary duty related to the acquisition of assets in a shale formation. *In re Longview Energy Co.*, 464 S.W.3d 353, 355–56 (Tex. 2015) (orig. proceeding). The trial court's judgment placed a constructive trust over the wrongfully acquired assets as well as future production revenues. *Id*. at 356. The trial court also awarded Longview Energy an additional $95.5 million. *Id.*

On appeal, the defendants sought relief from the $25 million bond set by the trial court as security to supersede enforcement of the judgment. The defendants took the position that the monetary award of future production revenues plus the additional $95.5 million were not

6

compensatory damages and, therefore, the trial court could not take those damages into consideration in setting the supersedeas bond. Conversely, Longview Energy argued that the trial court could consider the damages in setting the bond amount, asserting that since the award was not punitive, it was therefore compensatory. *Id.* at 360. The Texas Supreme Court held that the monetary award in that case was not compensatory, "and Hoff was not required to post security for those amounts." *Id*. at 361.

Nevertheless, in *Longview Energy* the Texas Supreme Court interpreted Rule 24.2(a)(1), which applies to the award of monetary damages, rather than Rule 24.2(a)(2), which applies to awards of real property interests. *Compare* TEX. R. APP. P. 24.2(a)(1) ("When the judgment is for money, the amount of the bond, deposit, or security must equal . . .") *with* TEX. R. APP. P. 24.2(a)(2) ("When the judgment is for the recovery of an interest in real . . . property, the trial court will determine the type of security that the judgment debtor must post."). The judgment awarding Tabor a property interest is controlled by Rule 24.3(a)(2), which does not address damages and has no requirement that an award be compensatory in order to be superseded.[4] Accordingly, *Longview Energy* is inapplicable to that portion of the supersedeas bond related to the award of property interests. Because the supersedeas bond related to the award of property interests in this case is "at least . . . the value of the property interest's rent or revenue," it does not violate Rule 24.2(a)(2). *See* TEX. R. APP. P. 24.2(a)(2)(A).

---

[4]There is no indication that the award of a real property interest was intended to be punitive.

7

**B. Supersedeas Bond Related to the Award of Monetary Damages**

The trial court also awarded Tabor monetary damages of $20,000.00, representing her share of the farm management bank account. This constitutes a "judgment for money," which is governed by Rule 24.2(a)(1). TEX. R. APP. P. 24.2(a)(1). Based on *Longview Energy*, Pettit concludes that the award of monetary damages in this case is not compensatory and, therefore, cannot be used to calculate the security requirements of Rule 24.2(a)(1). *See* TEX. R. APP. P. 24.2(a)(1).

Yet, unlike the monetary award in *Longview Energy*, the monetary award in this case was not punitive because it did not "make[] the 'defendant liable in excess of [its] net gains . . . .'" *Longview Energy*, 464 S.W.3d at 360. Rather, it merely rendered Pettit liable for the amount of money it allegedly fraudulently obtained from Tabor. Also, although this monetary award might be described as "an equitable forfeiture of benefits wrongfully obtained," *id.* at 361, Tabor did not seek the remedy of disgorgement, as did the plaintiff in *Longview Energy*. *Id.* at 356 (Longview specifically "sought disgorgement of the defendants' unjust enrichment[,] but did not seek damages"). Accordingly, on the facts of this case, and in view of *Longview Energy*'s limited holding, we decline to conclude that this monetary award was exempt from consideration under Rule 24.1(a)(1). Thus, the trial court properly considered the monetary award in calculating the supersedeas bond under Rule 24.2(a)(1). *See* TEX. R. APP. P. 24.2(a)(1); *Whitmire v. Greenridge Place Apartments*, 333 S.W.3d 255, 262 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd) (goal in setting supersedeas bond is to require amount which will adequately protect judgment creditor against loss or damage occasioned by appeal).

**B.     The Security Was Not Excessive**

Pettit next contends that even if the award of real property interests and the monetary award were required to be superseded, the bond is excessive.[5]  Pettit complains that although the trial court had before it uncontroverted evidence of "the value of the [real] property interest's rent or revenue," the $100,000.00 bond far exceeded the statutory amount.[6]  At the bond hearing, Tabor argued that the property was worth a million dollars and that her interest was one-half of that, or "half a million dollars."[7]

Here, the trial court was presented with undisputed evidence of the properties' rental values on which to base a proper bond amount.  The bond exceeded those values.[8]  Accordingly, Pettit argues that the trial court's bond was excessive.  In response, Tabor contends that by the express language of Rule 24.2(a)(2)(A), the properties' rental values are the *minimum* amount at which the bond may be set, giving the trial court discretion to set a higher bond.  Therefore, Tabor argues, the trial court's supersedeas calculations were not excessive.

---

[5]Pettit recognizes that if the $20,000.00 monetary award is not disgorgement, it must be superseded in accordance with Rule 24.2(a)(1).

[6]Pettit states that the disgorgement argument aside, "the amounts to be superseded are the $20,000.00 award for half of the value of the farm management account, $5,924.37 in court costs and the reasonable rental value of the farms for one year."  Pettit's excessiveness argument is focused solely on the rental value of the real property.

[7]The county appraisal district records included in Driggers' filings indicate that in 2017, the Hunt County 224.4-acre tract was valued at $591,980.00, including improvements, and the Delta County 70-acre tract was valued at $138,920.00 in 2018.

[8]The bond also imposed certain conditions to ensure protection of the property during the pendency of the appeal. Those conditions prohibit appellants from (1) transferring any interest in the properties; (2) executing any deeds or other legal transfer documents related to the properties; (3) advertising the properties for sale; (4) encumbering the properties; (5) devaluing the properties; (6) wasting any resource on the property, "including the sale or removal of water, wildlife or marketable timber"; (7) entering into any lease for the use of or residency on the properties; (8) failing to cover the properties with property and casualty and liability insurance; and (9) removing any utility connections, structures, or improvements from the properties.

The trial court determined that the minimum bond for the award of monetary damages was $28,160.62, and the minimum bond for the award of real property interests was $11,346.40. Accordingly, the total minimum bond for the relief awarded in the judgment is $39,507.02. The bond set by the trial court was $100,000.00. Therefore, the supersedeas bond in this case exceeds the total minimum bond by $60,492.98.

Rule 24.2(a)(1) provides that when a money judgment is superseded, the amount of the bond "*must* equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment." *See* TEX. R. APP. P. 24.2(a)(1) (emphasis added). Therefore, the trial court lacked discretion to increase any portion of the bond amount related to the money judgment. Consequently, we must interpret the $60,492.98 increase above the total minimum bond amount as being attributable solely to that portion of the bond amount related to the real property interests. As noted, the trial court determined that the minimum bond necessary to secure the real property interests awarded to Tabor was $11,346.40, plus interest. Accordingly, the question before us is whether the trial court abused its discretion when it increased the minimum bond requirement related to the real property award from $11,346.40 (minimum amount of supersedeas bond securing the real property award) to $71,839.39 (minimum amount of supersedeas bond securing the real property award plus $60,492.98).

In its fact findings,[9] the trial court expressed the belief that although it imposed conditions

on the bond, it "ha[d] very little confidence that appellant will abide by the conditions without

[9]The trial court issued the following findings of fact:

1. The judgment covered by the bond consists of a money judgment (i.e., $20,000.00), costs of court (i.e., $5,924.37), and the recovery by the appellee of a fifty percent interest in two tracts of land. Additionally, interest on the judgment is covered by the bond amount.

2. The trial court found that the rental value for the portion of the Hunt County farm capable of agricultural production was $2,692.80 per year. Fifty percent of that amount (representing appellee's undivided one-half interest to be protected by the bond) is **$1,346.40**.

3. The trial court found that the rental value for the Hunt County residence was $18,000.00 per year. Fifty percent of that amount (representing appellee's undivided one-half interest to be protected by the bond) is **$9,000.00**.

4. The trial court found that the rental value of the Delta County property, suitable as a hunting lease, was $2,000.00 per year. Fifty percent of that amount (representing appellee's undivided one-half interest to be protected by the bond) is **$1,000.00**.

5. The total rental value of the Hunt and Delta County properties (the sum of paragraph numbers 2, 3, and 4, above) is **$11,346.40**.

6. The rental value, the money judgment, and the costs of court total $37,270.77. Interest on that amount for one year is $2,236.25. The total amount of the bond, plus interest, "must be *at least*" **$39,507.02**. (Emphasis added)

7. While the properties and the way they have been kept and used over many years are unique, the trial court did not take that into consideration in determining the amount of the supersedeas bond. Further, the trial court did not follow appellees['] argument that the proper amount to set the bond would be the fair market value of the property.

8. The trial court did take great stock in the use of the words "at least" in Rule 24.2(a)(2)(A), Texas Rules of Appellate Procedure. ("When the judgment is for the recovery of an interest in real . . . property, the trial court will determine the type of security that the judgment debtor must post. The amount of that security must be *at least* the value of the property interest's rent or revenue, in the property interest is real.")

9. Both sides acknowledged that the value of the property interest's rent or revenue is the floor to be set, not the ceiling. The fair market value of the property is clearly well beyond the ceiling.

10. Appellant claims that the $100,000.00 bond amount set by the trial court is excessive by a factor of three. Actually, the bond amount of $100,000.00 is 2.53 times the amount the rules set for a supersedeas bond. (100,00[0].00/39,507.02 = 2.5311957)

11. In determining that the amount of bond should be higher than the sum of the money judgment, costs, rental value of the subject properties, and interest, the trial court further considered the evidence produced at trial. Specifically, the court considered evidence of appellant's efforts to defraud appellee and the extraordinary means appellant took to achieve his objective. While the court imposed conditions of bond, the trial court has very little confidence that appellant will abide by the conditions without further financial incentive to comply. Appellant has shown a propensity to do whatever he wants and has demonstrated a willingness to bend the law to do so. Accordingly, the trial court found it reasonable to set the bond at an amount two and one-half times the minimal calculation for

11

further financial incentive to comply." The trial court was in the best position to judge Pettit's character and credibility and concluded that Pettit "ha[d] shown a propensity to do whatever he wants and ha[d] demonstrated a willingness to bend the law to do so," given what the trial court characterized as Pettit's efforts to defraud Tabor and "the extraordinary means [Pettit] took to achieve his objective." Given these circumstances, we cannot say that the trial court's decision to increase the minimum bond amount was arbitrary or unreasonable. *See McDaniel*, 898 S.W.2d at 253. Accordingly, we do not find that the supersedeas bond in this case was excessive.

## III.    Conclusion

Having determined that the trial court acted within its discretion to increase the minimum bond requirement for the recovery of real property interests, we decline to reduce the supersedeas bond, and we deny Pettit's motion.

IT IS SO ORDERED.

BY THE COURT


Date:  July 18, 2019

---

the setting of the bond.  Though it was compelling argument, the trial court declined to set the bond at more than twelve and one-half times the minimal calculation for setting the bond as urged by the appellee.

(Footnotes omitted).