# Supreme Court of Texas

No. 24-0293

In re Greystar Development & Construction, L.P.; Gabriella Tower, LLC; and Greystar Development & Construction, L.P.—Gabriella Tower Contractor Series,

*Relators*

On Petition for Writ of Mandamus

JUSTICE HUDDLE, joined by Justice Bland, Justice Young, and Justice Sullivan, concurring in part and dissenting in part.

In an earlier case involving five jointly and severally liable defendants who secured a joint $25 million bond, the Court described Civil Practice and Remedies Code Section 52.006(b)(2) as "an absolute cap." *In re Longview Energy Co.*, 464 S.W.3d 353, 358 (Tex. 2015). Now, in this case involving three jointly and severally liable defendants who secured a joint $25 million bond, the Court holds that Section 52.006(b)(2)'s $25 million cap is decidedly *not* absolute. Under the Court's holding, the cap applies *per judgment debtor*, so a bond capped at $25 million, like the one in this case (and the one in *Longview Energy*), actually secures only *one* defendant, even if the bond was jointly secured by multiple defendants.

If the holding comes as a surprise—as it surely does for relators—it is for good reason. The Court's holding is at odds with the statutory text, which nowhere manifests a legislative intent to disturb the long-standing rule permitting joint bonds in supersedeas practice. *See, e.g.*, *McFarlane v. Howell*, 42 S.W. 853, 854–55 (Tex. 1897). The Court's holding rewrites the statute, appending words to convert the cap to "$25 million *per judgment debtor*" when it reads "$25 million"—full stop. And more is at stake here than ivory-tower textualism. Today's holding drives up the cost of appeals in multi-defendant cases. Indeed, it appears to require defendants to post security in excess of the judgment in some cases. This, of course, contravenes the Legislature's objective to make supersedeas and the right of appeal more easily available. The real-world consequences will reverberate most loudly in nuclear-verdict cases, which are increasingly common and can cripple judgment debtors regardless of the likelihood of their success on appeal.

Hewing to the text, I would hold that Section 52.006(b)(2)'s $25 million cap applies per bond, regardless of whether that bond is secured by one judgment debtor or jointly by two or more. I therefore would grant mandamus relief requiring vacatur of the trial court's contrary order in its entirety. Because the Court grants only partial relief, still requiring each judgment debtor to secure its own $25 million bond, I respectfully dissent.

# I

Relators are three affiliated construction companies found jointly and severally liable for over $400 million. To suspend execution of the judgment pending appeal, all three jointly filed a bond securing up to

$25 million should the judgment be affirmed as to any one of them. Plaintiffs later sought review of the bond, arguing that Section 52.006(b)(2)'s $25 million cap applies per judgment debtor. The trial court agreed, found that the joint bond secured only one of the three relators, and declared the other two unsecured, allowing immediate enforcement of the judgment against them.

After the court of appeals denied it, relators sought relief in this Court. Their argument is twofold. They argue, first, that the $25 million cap applies per judgment, not per judgment debtor. Second, they contend that, even if their lead argument fails, the trial court abused its discretion in declaring two of them immediately unsecured without first affording them an opportunity to post additional security.

## II

Though we review the trial court's rulings regarding the amount of security and modification of the required bond under Rule of Appellate Procedure 24.3(a) for abuse of discretion, *see* TEX. R. APP. P. 24.4(a)(5), a trial court has no discretion to misinterpret or misapply the law, *In re Millwork*, 631 S.W.3d 706, 711 (Tex. 2021). "The correct interpretation of a statute is a matter of law, which we review *de novo*." *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 406 (Tex. 2022).

"As with any statute, our interpretation begins with the statute's text." *Third Coast Servs., LLC v. Castaneda*, 726 S.W.3d 201, 206 (Tex. 2025). We "presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Id.* (quoting *Rogers v. Bagley*, 623 S.W.3d 343, 352 (Tex. 2021)). We interpret the words the Legislature chose

according to their common, ordinary meaning unless the text supplies a different meaning.  *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

The words the Legislature chose in Section 52.006(b)(2) are conclusive, and they do not mean what the Court says they do.  The parties and the Court focus on two possible readings of Section 52.006, applying the $25 million cap either per debtor or across the entire judgment.  Neither is correct.  Section 52.006(b) states that "when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." TEX. CIV. PRAC. & REM. CODE § 52.006(b).  The Court correctly inserts Chapter 52's definition of "security" into this language.  *See id.* § 52.001.  Doing so, Section 52.006(b) reads:

> [W]hen a judgment is for money, the amount of [a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment] must not exceed the lesser of:
>
> (1) 50 percent of the judgment debtor's net worth; or
>
> (2) $25 million.

Thus, the statute refers to only two caps, with the instruction to implement the lesser of the two—50 percent of the judgment debtor's net worth or, separately, $25 million.  What is capped is "the amount of security," which, when read with Section 52.001's definition of "security," is the amount of *a bond*.  In other words, the cap does not apply per debtor or per judgment, as the parties dispute, but per bond.

The Court acknowledges the general proposition that jointly and severally liable judgment debtors may file a joint supersedeas bond. *Ante* at 19–20.  Yet it concludes that when those same judgment debtors

seek the protection of Section 52.006(b)(2)'s cap, a joint $25 million bond will not suffice. Why not?

The Court makes much of the fact that Chapter 52 defines "security" as "*a* [singular] bond . . . posted . . . by *a* [singular] judgment debtor." TEX. CIV. PRAC. & REM. CODE § 52.001 (emphases added). The Court reasons that the use of the singular article "a" links each bond, and the $25 million cap, to a single debtor. In the Court's view, the $25 million bond cap may still be "absolute," *Longview Energy*, 464 S.W.3d at 358, but only as to each debtor individually. Yet the Court nowhere explains why this must be so and, indeed, it is not.

In civil statutes, the Legislature has instructed that the "singular includes the plural and the plural includes the singular." TEX. GOV'T CODE § 312.003(b). Indeed, "using the singular over the plural" is more all-encompassing, referring to both the one and the many, because "the proposition that many includes only one is not as logically inevitable as the proposition that one includes multiple ones." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 130–31 (2012). Applying these principles to Section 52.006(b), a single bond may be posted by "a judgment debtor" or by "judgment debtor[s]." This dovetails with the Court's concession that joint bonds are permissible and have been for quite a long time.

The Court counters that pluralization must be all or nothing. So, it claims, if we read "debtor" to be plural, we must also pluralize "amount" and "bond." Such a reading results in the $25 million cap applying to the *amounts* of *bonds* posted by judgment *debtors*, which the Court asserts would require that each debtor post an individual bond

5

capped at $25 million. But this all-or-nothing approach misapplies the rule that the singular includes the plural and contradicts the Court's own concession that jointly and severally liable debtors may post a joint bond. The principle that the singular includes the plural allows "debtor" (but not "amount" and "bond") to be rightfully pluralized here because this case involves multiple debtors but only a single bond in a single amount. *See Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021) (explaining that a singular term may be pluralized to "apply [a statute] to multiple persons, parties, or things"). Section 52.006 would also certainly cover situations in which there are multiple "bonds," and thus multiple "amounts" of security, so those nouns may be pluralized when applying the statute to those cases. But that is not this case. The three relators posted one singular bond, consistent with Texas's long history of permitting joint bonds in supersedeas practice. *See, e.g., McFarlane*, 42 S.W. at 854–55.

Section 52.006(b) caps the amount of a bond at $25 million but does not mention joint bonds. This is where the background law comes into play. It has long been the case that suspending execution of a judgment could be achieved by multiple jointly and severally liable judgment debtors posting only *one* bond, so long as the surety is liable for the full amount of the bond should judgment be rendered against one of them alone. *See id.*; *ante* at 19–20. My reading of Section 52.006(b) coheres with this rule. The only thing that has changed since we first acknowledged the practice of superseding judgments with joint bonds is that the Legislature has capped the amount of a bond needed to suspend execution at $25 million. There is no textual support for the Court's

6

claim that, in capping the amount of a bond at $25 million, the Legislature intended to upend the historical practice of obtaining a bond jointly, as related or aligned defendant–appellants commonly do.

This practice of posting joint bonds has long been accepted, and it is perfectly consistent with the Court's assertion that "all parties appealing from a money judgment must post their own bond." *Ante* at 25. When parties post a joint bond, it belongs to each of them and is rightfully called their "own." *See Fortune v. McElhenney*, 645 S.W.2d 934, 935 (Tex. App.—Austin 1983, no writ); *McFarlane*, 42 S.W. at 854–55. It secures each judgment debtor up to the bond's full amount, so each has its own bond.

The Court insists that a joint bond is still permissible under its reading "so long as that bond results in the same liability for each debtor (in the event the judgment is affirmed) as if they had proceeded under separate bonds." *Ante* at 20. If relators had posted separate bonds (each capped at $25 million) and the judgment were affirmed as to all three, the bonds' sureties would be liable for $75 million. So, the Court asserts, relators could file a joint bond only if it imposes liability on the bond's surety up to $75 million, or ***three times*** the Legislature's cap on the amount of a bond.

The Legislature is presumed to have enacted Section 52.006 with complete knowledge of the long-standing practice of jointly and severally liable defendants filing a joint bond. *See Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 592 (Tex. 2025); SCALIA & GARNER, *supra*, at 318 ("[S]tatutes will not be interpreted as changing the common law unless they effect the change with clarity."). Yet the Legislature did not

7

instruct that the cap for a joint bond works differently than for any other bond.  Instead, it commanded that, "the amount of security [defined as *a bond*, without limitation] must not exceed . . . $25 million."  TEX. CIV. PRAC. & REM. CODE § 52.006(b).  Joint bonds are not excluded—they are included.  Rather than harmonize the statute's text with this background legal practice, the Court contravenes it.[1]

To bolster its atextual and ahistorical reading, the Court looks to other post-judgment procedures, assuming this one must behave in the same way.  It reasons that because other supersedeas rules address a

---

[1] Although we need not definitively pass on the meaning of Section 52.006(b)(1), which is not at issue here, the reading I propose does not allow the gamesmanship the Court portends.  The Court argues its per-debtor reading is the only way to avoid the absurd result that one insolvent debtor could post a nominal bond representing 50% of its net worth to secure the entire judgment for all defendants.  *Ante* at 22.  There are two other plausible readings of Section 52.006(b)(1) that avoid this result.

In the first, the alternative cap of "50 percent of the judgment debtor's net worth" refers to 50 percent of the debtors' cumulative net worth when multiple debtors post a joint bond.  Thus, Section 52.006(b) instructs that security be capped at the lesser of 50 percent of a debtor's *individual* net worth or $25 million when a bond is posted by one debtor, *or* 50 percent of the debtors' *cumulative* net worth or $25 million when multiple debtors post a joint bond.

In the second possible reading, because the net-worth cap expressly applies to "the judgment debtor's net worth," the statute prohibits a judgment debtor whose bond would be capped at $25 million from relying on another judgment debtor's net worth to reduce the cap, even on a jointly filed bond.  If the parties file a joint bond, one or more of the judgment debtors could take advantage of the net-worth cap to reduce their individual obligation under the bond.  But that would not alter the $25 million cap that otherwise would apply to the bond.

I do not endorse one of these readings over the other but submit both as consistent with a per-bond reading of the $25 million cap while avoiding the absurd scenario the Court raises.

single judgment debtor, so too must Section 52.006(b)(2). Yet, as the Court acknowledges, the "Legislature has been active in this area, striking a multifaceted policy balance between a judgment creditor's right to collect and a judgment debtor's right to appeal." *Ante* at 2. To determine how the Legislature intended a carefully crafted procedure to operate, we do not look generally to other procedures the Legislature has established but instead focus on the words the Legislature chose to design the procedure in question. Context matters, of course, but the Court reads too much into other post-judgment procedures' references to individual judgment debtors. Where statutory provisions tangentially related to the one at issue do not alter the meaning of clear text, we should disregard them, not strain to discern some hidden relevance.

In addition to consistency with text and history, a per-bond reading has the further benefit of cohering with Chapter 52's objective, which this Court described as "mov[ing] further toward protecting money judgment debtors and the right of appeal" and "deliberately ma[king] supersedeas more easily available." *Longview Energy*, 464 S.W.3d at 358, 360. The Court's rule is incongruous with this objective. The statutory history reflects that the Legislature sought to reduce the burden on judgment debtors pursuing their appellate rights, particularly in cases involving large judgments. Whereas earlier law required posting security in twice the amount of the judgment, then an amount equal to it, Chapter 52 sought to make appeals more available and less costly. *Id.* at 357–58. Yet a logical reading of the Court's

9

holding would require the posting of security that exceeds the judgment in some cases.

Take, for example, a case involving five defendants found jointly and severally liable for $100 million. The Court's rule would seemingly require any joint bond to be in the amount of $25 million per defendant for a total security of $125 million—an amount exceeding the judgment.[2] That does not make supersedeas more easily available or protect the right of appeal. Far from it.

Because the Court's decision rewrites the careful balance the Legislature struck in Section 52.006, the Legislature may wish to reconsider whether the statute as currently written best protects the important competing interests at play.

## Conclusion

The Court correctly holds that the trial court clearly abused its discretion when it immediately invalidated the joint bond, without providing relators an opportunity to provide additional security before allowing the judgment's execution. But I disagree with the Court's conclusion that Section 52.006(b)(2)'s $25 million cap applies per judgment debtor. For the reasons discussed above, I would hold that the

---

[2] The Court insists this is not the case because a joint bond would be capped at the amount of the judgment—$100 million in this hypothetical—plus interest and costs. *Ante* at 26 n.6. But the Court identifies no textual basis for this assertion. To the contrary, if (as the Court holds) "the amount of security" in Section 52.006(b) refers only to the amount of a single bond posted by a single judgment debtor, it must have the same meaning in Section 52.006(a), which requires "the amount of security" to equal the full amount of damages, interest, and costs. In the same way the Court's reading would not permit a joint bond to be capped at $25 million, it seemingly would not permit a joint bond to be capped at the amount of the judgment.

10

cap applies per bond, so relators' $25 million joint bond was sufficient to stay execution against all three relators pending appeal. Accordingly, I would grant relief requiring vacatur of the trial court's contrary order in its entirety. Because the Court fails to do so, I respectfully dissent.

 

Rebeca A. Huddle
Justice

**OPINION FILED:** May 22, 2026