# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00593-CV

---

**Stephen Sakonchick, II, Appellant**

**v.**

**Overlook at Rob Roy Owner, LLC, Appellee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-006114, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Stephen Sakonchick, II appeals from the trial court's order granting appellee Overlook at Rob Roy Owner, LLC's motion for contempt and sanctions. By several issues that we have reorganized, Sakonchick complains that: (1) the trial court lacked jurisdiction to enter any post-judgment discovery orders; (2) the trial court's contempt order is vague and ambiguous; (3) he lacked possession, custody, or control over the discovery requested; (4) Overlook failed to specify the format in which the requested discovery should be produced; and (5) insufficient evidence supported the trial court's award of attorney's fees.

For the reasons discussed below, we construe part of Sakonchick's appeal as a petition for writ of mandamus and we deny it. We affirm the trial court's award of $20,000 in reasonable and necessary attorney's fees.

# I.    BACKGROUND

The current proceeding involves post-judgment discovery sought by Overlook in satisfaction of the final judgment it obtained against Sakonchick. *See Sakonchick v. Overlook at Rob Roy Owner, LLC*, No. 03-23-0085-CV, 2025 WL 626590, at *1 (Tex. App.—Austin Feb. 27, 2025, pet. denied) (mem. op.).  After this judgment was entered and Overlook began conducting post-judgment discovery, Sakonchick obtained a supersedeas bond to suspend enforcement of the judgment while his appeal was pending.

In response to Overlook's post-judgment interrogatories and requests for production, Sakonchick filed a motion for protective order.  Sakonchick objected to the discovery sought on the basis that it was irrelevant, "unreasonably oppressive and harassing, s[ought] information on persons and entities not liable on the judgment debt, [and] violate[d] the privacy rights of Sakonchick and others."  Sakonchick asserted that many of Overlook's discovery requests sought information on property exempt from debt collection.  He further claimed that he had "relatively" few non-exempt assets.

Attached to Sakonchick's protective-order motion was a "Confidential Non-Exempt Property Declaration" in which Sakonchick disclosed that his only non-exempt assets were "credit card airline miles and cash back, a single checking account with less than $50 balance, and a Subscriber's Account at USAA" that occasionally paid dividends.[1] Sakonchick represented that through his thirty-nine years of experience as an attorney primarily focused on debt collections, he had "become intimately familiar with Texas exemption laws and identifying various categories of exempt real and personal property afforded individual Texans."

---

[1] The record indicates that Sakonchick also produced a "Confidential Protected Property Declaration" for the court's in camera inspection that detailed "Sakonchick's exempt assets and the basis for each of the exemptions."  This declaration was not included in the appellate record.

In response to Sakonchick's protective-order request, Overlook filed a motion to compel. Overlook contended that the supersedeas bond did not prevent post-judgment discovery from proceeding and asserted that "discovery is needed because the information provided thus far by [Sakonchick] . . . raises very serious concerns that [he] has been and remains engaged in a systematic effort to dissipate assets to avoid enforcement of the Judgment." Specifically, Overlook observed that Sakonchick responded to discovery requests indicating that there was a $25,000 judgment against him entered in 2008 that he never satisfied.

Overlook also observed that, despite representing to the jury in the underlying suit that he was a solo practitioner, Sakonchick's discovery responses indicated that he only owned "about one third [of] the issued and outstanding stock" in his firm. Overlook represented to the trial court that while looking through franchise tax records, Overlook discovered that the trustee of a voting trust was listed as the director of Sakonchick's firm. Overlook further noted that the timing of the voting trust's designation roughly coincided with the date on which Sakonchick became "one of several beneficiaries of an irrevocable spendthrift trust," and about which he refused to provide further detail. According to Overlook, "[t]aken as a whole, especially considering the 2008 Judgment, the foregoing raises th[e] very serious prospect that [Sakonchick] has attempted to set up some type of trust to divert income he receives so that it cannot be levied by creditors." Overlook asked the court to overrule Sakonchick's objections, compel the discovery sought, and consider enjoining Sakonchick from dissipating assets.

The trial court signed an order granting in part and denying in part both parties' requested relief. In relevant part, the trial court ordered Sakonchick to produce within twenty-one days of its order:

3

All statements [from the past three years] concerning any account, of any kind whatsoever, in which [Sakonchick] is entitled to draw and/or direct payment/transfer . . . funds or assets, or in which funds or property belonging to [Sakonchick] and/or [Sakonchick]'s spouse have been deposited or held, or from which [Sakonchick] has received any type of distribution, including, but not limited to, statements, cancelled checks, etc.

However, three days before this discovery was due, Sakonchick filed a petition for writ of mandamus and emergency motion to stay seeking relief from the trial court's discovery order, which this Court denied. *See In re Sakonchick*, No. 03-23-00260-CV, 2023 WL 3235935, at *1 (Tex. App.—Austin May 3, 2023, orig. proceeding [mand. denied]) (mem. op.). Sakonchick then filed a motion for clarification, modification, and extension of the order compelling discovery.

In response, Overlook filed a motion to show cause, for contempt, and for sanctions. Overlook attached Sakonchick's supplemental responses and objections to its propounded discovery. In response to the request for production at issue, Sakonchick wrote "Answer-Subject to Petition for Writ of Mandamus." Overlook represented in its motion that Sakonchick did not produce any documentation at that time. Overlook also attached Sakonchick's second supplemental responses and objections to discovery, in which Sakonchick responded that "[b]ased on the court's sustaining Sakonchick's objection to [several] interrogatories . . . any inquiry as to Sakonchick's exempt assets and his wife's separate and sole management community property is not relevant and not being provided." Overlook represented that Sakonchick again did not produce any documentation.

The trial court held a hearing on Overlook's motion. Overlook acknowledged that, after it filed its motion, Sakonchick had supplemented his discovery responses and

4

produced some documentation. However, Overlook contended that two key items were still missing: (1) Sakonchick's personal and business bank statements; and (2) brokerage statements from his family trusts.

The trial court admitted into evidence Sakonchick's third supplemental responses in which Sakonchick identified he had an interest in three different family trusts, all of which are allegedly exempt spendthrift trusts: (1) the Charyn Trust, (2) the Angst Trust, and (3) the Phoenix Trust. In these responses, Sakonchick represented that he was the trustee and settlor of the Charyn and Angst Trusts and one of the beneficiaries of the Phoenix Trust. Sakonchick acknowledged that the Charyn and Angst Trusts were funded in part "by Sakonchick's separate property" and that the Charyn Trust contained assets totaling $363,000 and the Angst Trust contained assets totaling $85,000, both of which consisted mainly of brokerage accounts. According to these responses, on June 8, 2008, Sakonchick transferred 200 shares of Apple stock to the Angst Trust. Sakonchick represented that he "only has possession and control of the information regarding trust assets as the trustee and as attorney for the trust for the purpose of preparing tax returns and trust administration." Sakonchick also detailed that the Phoenix Trust was created in 2008, that his wife was the trustee, and that it was funded by her separate property. However, he also stated that he had "access [to] information regarding the trust . . . as the attorney for the trust in preparing tax returns and advising the trustee on trust matters." He explained that he was "not aware of the total assets of Phoenix Trust but believes it has total assets of approximately $260,000, consisting of a brokerage account, and undivided interests in other assets."

Sakonchick testified that he did not request any financial statements from the Charyn or Angst Trusts. Sakonchick also acknowledged that his law firm's bank statements

5

were responsive to the discovery request at issue. However, he argued that since he was sued in his individual capacity, he could not be compelled in his capacity as trustee or corporate officer to produce the trusts' or law firm's financial information. Sakonchick further testified that he asked his wife as trustee of the Phoenix Trust to produce the relevant financial statements, but "[s]he said, no."

Sakonchick further argued that these documents and his personal bank statements were only available to him in electronic form. However, because Overlook did not specifically request electronic documents, Sakonchick did not believe he was required to comply with this request. He acknowledged that he made no effort to request physical versions of the documents from the various financial institutions with which these accounts were held and could have requested them but stated "whether they're obligated to give [them] to me, I'm not sure that's correct."

Sakonchick also produced a voting-trust agreement concerning his law firm dated June 2, 2008, which provided that Sakonchick's wife, a non-lawyer, owned 67% of the law firm's shares. Sakonchick acknowledged that this agreement went into place shortly before a judgment was obtained against him that he has still not satisfied.

The trial court signed an order granting Overlook's motion for contempt and sanctions. The court ordered Sakonchick to produce his individual bank statements as well as statements for his law firm. It also ordered him to produce the financial statements for the Charyn, Angst, and Phoenix Trusts. It specified that, after thirty days elapsed, Sakonchick would be confined and required to pay a fine of $250 per day if he remained out of compliance with the trial court's order. The trial court also ordered Sakonchick to pay $20,000 in reasonable and necessary attorney's fees. Sakonchick filed a notice of appeal, and this proceeding ensued.

6

## II.     JURISDICTION

The parties each raise a separate jurisdictional argument.  First, Overlook argues that our jurisdiction over this appeal extends only to certain portions of the trial court's order, as contempt orders are generally reviewable only by mandamus.  Second, Sakonchick argues that the trial court lacked jurisdiction to issue any of its orders, as he posted a supersedeas bond suspending the trial court's original judgment.  We address each argument in turn.

### A.     Our Jurisdiction

Sakonchick contends that we have jurisdiction to review the contempt order, as it "is a final appealable judgment [that] disposes of all parties and issues."  But "[c]ontempt proceedings are not concerned with disposing of all claims and parties before the court, as are judgments; instead, contempt proceedings involve a court's enforcement of its own orders, regardless of the status of the claims between the parties before it."  *In re Office of Att'y Gen. of Tex.*, 215 S.W.3d 913, 915–16 (Tex. App.—Fort Worth 2007, orig. proceeding).  Accordingly, "a contempt order is not a final judgment" and "a remedy by appeal does not lie."  *Id.* at 916; *Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985) (per curiam) (holding court of appeals erred in assuming jurisdiction over contempt order because it was not final, appealable judgment).  "Because contempt orders are not appealable, they are reviewable only by writ of mandamus or habeas corpus."  *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) (per curiam).

Here, the trial court's order found Sakonchick in contempt and made confinement and payment of the per diem fine contingent on Sakonchick's failure to comply with its order. Therefore, these portions of the order constitute civil contempt and are not reviewable by appeal.

*See id.*; *In re Kozinn*, No. 03-23-00748-CV, 2024 WL 2855077, at \*2 (Tex. App.—Austin June 6, 2024, orig. proceeding [mand. denied]) (mem. op.) ("A judgment that provides that the contemnor is to be committed or fined unless and until he performs the affirmative act required by the court's order is a civil contempt order.").

Sakonchick requests in his reply brief that, "[t]o the extent necessary" to preserve our jurisdiction, we also treat his appeal "as a petition for writ of mandamus." Rigid rules "are necessarily inconsistent with the flexibility that is the [mandamus] remedy's principal virtue." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). In determining whether to treat an appeal as a petition for writ of mandamus, we do not demand perfection from the party seeking to invoke our jurisdiction. *CMH Homes v. Perez*, 340 S.W.3d 444, 452 (Tex. 2011) (appellant invoked court of appeals' original jurisdiction "by specifically requesting that its appeal be treated as a mandamus petition"); *In re Strickland*, 703 S.W.3d 841, 847 (Tex. App.—Austin 2024, orig. proceeding) (sua sponte treating appeal as petition for writ of mandamus); *Coronado v. Jones*, No. 03-13-00464-CV, 2015 WL 2183459, at \*1 (Tex. App.—Austin May 6, 2015, no pet.) (mem. op.) ("[R]equiring the filing of a separate mandamus proceeding under the circumstances before us, including that the case has been briefed and both the clerk's and reporter's records have been filed, would unnecessarily waste the parties' time and additional judicial resources."). Rather, "the factor which determines whether jurisdiction has been conferred on the appellate court is not the form or substance of the bond, certificate or affidavit, but whether the instrument 'was filed in a bona fide attempt to invoke appellate court jurisdiction.'" *Warick Towers Council of Co-Owners v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008) (per curiam) (quoting *Walker v. Blue Water Garden Apartments*, 776 S.W.2d 578, 581 (Tex. 1989)). Sakonchick has requested that we treat his

appeal as a mandamus proceeding "in a bona fide attempt to invoke . . . jurisdiction"; accordingly, we will construe his appeal as it pertains to the contempt order and order compelling post-judgment discovery as a petition for writ of mandamus. *See CMH Homes*, 340 S.W.3d at 452.

Nevertheless, "[m]andamus relief is an 'extraordinary remedy,' *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021), which we issue 'only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law.'" *In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam). Because Sakonchick has not met his burden to show that the trial court's contempt order and order compelling discovery were clear abuses of discretion, we deny his petition for writ of mandamus. *See id.*; Tex. R. App. P. 52.8(d) ("When denying relief, the court may hand down and opinion but is not required to do so.").

The trial court's order also requires Sakonchick to pay $20,000 in attorney's fees as a monetary sanction. *See* Tex. R. Civ. P. 215.2(b)(8) (providing that if trial court finds party "fail[ed] to comply with proper discovery requests or to obey an order to provide or permit discovery" then "court shall require the party failing to obey the order . . . to pay . . . the reasonable expenses, including attorney fees, caused by the failure"). "Most post-judgment orders made for the purpose of enforcing or carrying into effect an already-entered judgment are not subject to an appeal because an appeal is typically not statutorily authorized from such an order and because such orders are typically not final judgments or decrees." *In re Doe*, 397 S.W.3d 847, 849 (Tex. App.—Fort Worth 2013, orig. proceeding). But "when an order of monetary sanctions is issued as part of post-judgment discovery proceedings, a challenge to the monetary sanctions may be reviewed by appeal." *Sintim v. Larson*, 489 S.W.3d 551, 557 (Tex.

9

App.—Houston [14th Dist.] 2016, no pet.) (first citing *Arndt v. Farris*, 633 S.W.2d 497, 500 n.5 (Tex. 1982); and then citing *Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied)). Because the trial court's imposition of $20,000 in attorney's fees constitutes an order of monetary sanctions issued as part of post-judgment discovery proceedings, we have jurisdiction to review the issues Sakonchick raises concerning it via his appeal. *See id.*; *In re Roisman*, 651 S.W.3d 419, 449 n.5 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding) (reviewing contempt portion of trial court's enforcement order by mandamus and other enforcement provisions by appeal).

## B. The Trial Court's Jurisdiction

This brings us to Sakonchick's jurisdictional argument. Sakonchick argues that the trial court erred by allowing discovery to proceed while the underlying judgment was suspended by the associated supersedeas bond.

> At any time after rendition of judgment, *and so long as said judgment has not been suspended by a supersedeas bond* or by order of a proper court and has not become dormant as provided by Section 34.001, Civil Practice and Remedies Code, the successful party may, for the purpose of obtaining information to aid in the enforcement of such judgment, initiate and maintain in the trial court in the same suit in which said judgment was rendered any discovery proceeding authorized by these rules for pre-trial matters.

Tex. R. Civ. P. 621a (emphasis added).

Texas Rule of Appellate Procedure 24.1(e) provides that "[t]he trial court may make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal may cause." Tex. R. App. P. 24.1(e). The Texas Supreme Court has interpreted these two rules together and held that "nothing in Rule 621a purports to limit Rule 24.1(e); to the

10

contrary, Rule 621a permits discovery relevant to Rule 24 motions." *In re Longview Energy Co.*, 464 S.W.3d 353, 362 (Tex. 2015) (orig. proceeding).

Overlook's motion to compel argued that "it may be necessary for the Court to issue an injunction enjoining [Sakonchick] from dissipating assets" and asked "for discovery to continue concerning whether the Court should issue an injunction under Rule 24 of the Texas Rules of Appellate Procedure." Because the judgment was superseded, post-judgment discovery was not permitted as it pertained to enforcement of the judgment. *See In re Emeritus Corp.*, 179 S.W.3d 112, 114–15 (Tex. App.—San Antonio 2005, orig. proceeding [mand. denied]). Nevertheless, the trial court had discretion to order discovery insofar as it pertained to Overlook's request to enjoin Sakonchick from dissipating or transferring assets to avoid satisfaction of the judgment. *See id.* at 117; *In re Longview Energy Co.*, 464 S.W.3d at 362. Because the discovery Overlook sought was aimed at precisely that, we conclude that the trial court had jurisdiction to allow post-judgment discovery and award the discovery sanctions at issue. We overrule this issue.

### III. AWARD OF SANCTIONS

Sakonchick argues that the trial court's award of sanctions is an abuse of discretion because: (1) he did not have possession, custody, or control over the records at issue; (2) Overlook failed to specifically request electronic discovery; and (3) the award of attorney's fees is not supported by the evidence.

### A. Standard of Review

Rule 215 permits a trial court to sanction a party if, after notice and hearing, it finds that the party failed to comply with valid discovery requests or obey an order to provide

11

discovery, or that the party is abusing the discovery process. Tex. R. Civ. P. 215.2(b), 215.3. We review a trial court's assessment of sanctions for discovery violations for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Id.* at 838–39 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). "The trial court's ruling should be reversed only if it was arbitrary or unreasonable." *Id.* at 839.

Trial courts have broad discretion to sanction a party for failing to adequately respond to a valid discovery request. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 442 (Tex. 1984). Even "when a party eventually complies with a discovery request," sanctions can nonetheless be appropriate. *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 884 (Tex. 2017). However, the sanctions imposed must be "just" and "not . . . excessive." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Thus, "a direct relationship must exist between the offensive conduct and the sanction imposed," and a "sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes." *Id.*

## B.     Possession, Custody, or Control

Sakonchick contends that he did not have possession, custody, or control over the records in question. "[W]hen a motion for sanctions asserts that a respondent to a discovery request has failed to produce a document within its possession, custody or control, the movant has the burden to prove the assertion." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725,

729 (Tex. 1993) (orig. proceeding). Overlook alleged and the trial court found that Sakonchick failed to produce monthly account statements for several bank and brokerage accounts, including those held by the Angst, Charyn, and Phoenix Trusts and his law firm, Stephen Sakonchick, II, P.C. Accordingly, we must address whether sufficient evidence supports the trial court's implicit finding that Sakonchick had possession, custody, or control over these statements. *See id.* at 728.

### 1. Bank Accounts Owned by Sakonchick Individually

Sakonchick argues that the financial institutions with which he has a personal account have the right to possession, custody, or control over the corresponding financial statements, not him. "*Possession, custody, or control* of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." Tex. R. Civ. P. 192.7(b). Because Sakonchick acknowledged that the bank accounts were his, he had, at a minimum, constructive possession over the corresponding bank records. *See Jurgens v. Martin*, 631 S.W.3d 385, 409–10 (Tex. App.—Eastland 2021, no pet.). And thus, he had "possession, custody, or control" over the documents sought. *See GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729 ("possession custody or control" includes "not only physical possession, but constructive possession," including "the right to obtain possession from a third party, such as an agent or representative"). We overrule this sub-issue.

### 2. Trusts & Law Firm

Sakonchick contends that "[a]s trustee for certain trusts, and attorney for all the trusts and his corporation, Sakonchick may have had access to those entities' records, but he

13

lacked legal control over those documents in his individual capacity."[2]  Sakonchick mistakes

what is required.  He "does not need 'individual personal possession, custody or control' to be

required to produce documents under the rules of civil procedure; rather the law requires only

that he have either actual physical possession, or constructive possession, or the right to obtain

possession from a third party such as an agent or representative." *In re Summersett*, 438 S.W.3d 74,

82 (Tex. App.—Corpus Christi–Edinburg 2013, orig. proceeding [mand. denied]).  In other

words, Sakonchick must only have "a right to possession that is equal or superior to the person

who has physical possession" to be in possession, custody, or control of an item.  *See* Tex. R.

Civ. P. 192.7(b).

In his discovery responses, Sakonchick explained that he "is the settlor and

trustee" of the Charyn Trust and Angst Trust.  Sakonchick represented that he had actual

"possession and control," not mere access, to the information concerning these two trusts.  *See*

*In re Summersett*, 438 S.W.3d at 82.  Despite this, at the hearing, Sakonchick stated, "As trustee,

I'm not approving [the statements'] production."

As to his law firm, Sakonchick testified that he and his wife, a non-lawyer, shared

ownership of the firm.  *But see* Tex. Disciplinary Rules Prof'l Conduct R. 5.04(a)d)(1) ("A

lawyer shall not practice with or in the form of a professional corporation or association

authorized to practice law for a profit, if . . . a nonlawyer owns any interest therein, except that a

fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for

---

[2]  To the extent Sakonchick argues that statements concerning the trusts and his law firm are not responsive to the request for production at issue, we are unpersuaded.  Sakonchick testified at the show-cause hearing that he knew his law firm's bank statements were responsive to the request.  He also acknowledged that all three trusts were funded by either his or his wife's separate property, and the request in question sought "all statements [from the past three years] concerning any account, of any kind whatsoever, . . . in which funds or property belonging to [Sakonchick] and/or [Sakonchick]'s spouse have been deposited or held."

a reasonable time during administration . . . .").  Sakonchick testified that he had access to the firm's financial records but only in his capacity as an attorney.

Despite the evidence suggesting he has a right to possess these records, Sakonchick contends that the trial court cannot sanction him for failing to produce documents that he has possession, custody, or control of only in a separate capacity.  Discovery is generally permitted of any unprivileged information that is relevant to the subject of a lawsuit.  Tex. R. Civ. P. 192.3(a).  "The primary policy behind discovery is to seek truth so that disputes may be decided by facts that are revealed rather than concealed."  *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex. 1990) (orig. proceeding).

Below, the attorney for Overlook expressed concern that there was "a lot of strangeness going on," and the record indicates that Overlook considered pursuing a claim under the Uniform Fraudulent Transfer Act.  *See* Tex. Bus. & Com. Code § 24.008(b) ("If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on [a fraudulently transferred asset] or its proceeds.").  The voting-trust arrangement that gave Sakonchick's non-lawyer wife a majority ownership interest in his law firm was put in place in 2008, the same year that a separate judgment he never satisfied was entered against him.  That same year, the Phoenix Trust was created and assets held by the Charyn and Angst Trusts changed ownership.  *See id.* § 24.005(b)(10) (factor to consider when determining whether judgment debtor had actual intent to "hinder, delay, or defraud any creditor" is whether "transfer occurred shortly before or after a substantial debt was incurred").  When there is a concern that a judgment debtor may be secreting assets to avoid satisfaction of a judgment, the trial court may permit discovery concerning where those assets are being secreted.  *See Collier Servs. Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi–Edinburg

15

1991, orig. proceeding) (holding in post-judgment discovery dispute that "no right of privacy would protect LCC or its directors against the disclosure of the other business interests of the directors"); *see also Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *8 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.) (turnover of ex-husband's businesses was warranted where "entities appear to have been formed . . . for the sole purpose of taking ownership of nonexempt assets awarded to him in the divorce"). Indeed, that is precisely why post-judgment discovery is permitted when an order's enforcement has been suspended. *See* Tex. R. App. P. 24.1(e) ("The trial court may make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause."); *In re Longview Energy Co.*, 464 S.W.3d at 362. Here, Overlook expressed concern that Sakonchick may be using his law firm or family trusts to conceal and dissipate nonexempt assets, and given that the 2008 judgment against him coincided with the transfer of Sakonchick's assets to exempt trusts, the trial court had sufficient evidence before it to share that concern. Accordingly, the trial court did not abuse its discretion by permitting discovery of the law firm's and trusts' recent financial statements. *See Collier Servs. Corp.*, 812 S.W.2d at 377.

For the Phoenix Trust, Sakonchick stated in his discovery responses that his "access [to] information regarding this trust has been as the attorney for the trust in preparing tax returns and advising the trustee on trust matters." However, Sakonchick also acknowledged that he, as an individual, is a beneficiary of the trust. A trustee "must handle trust property solely for the beneficiaries' benefit." *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009). And "[a] beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts concerning all transactions since the last accounting or since the creation of the trust, whichever is later." Tex. Prop. Code § 113.151(a). If the trustee fails to

16

comply with the demand, "any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust." *Id.* Although Sakonchick testified that he asked his wife to turn over the records in question and she refused, that does not mean he lacks an equal or superior right to possession of them. Moreover, Sakonchick testified that he had access to these documents through his role as attorney for the trust. *See Collier Servs. Corp.*, 812 S.W.2d at 377. Accordingly, we also conclude that the trial court did not abuse its discretion by ordering Sakonchick to produce the Phoenix Trust's financial statements.

We overrule this sub-issue.

## C. Electronic Discovery

Next, Sakonchick argues that because Overlook failed to specifically seek electronic discovery, and because the financial statements were available to him in an electronic format, the trial court erred by sanctioning him for failing to produce these records.

> To obtain discovery of data or information that exists in electronic or magnetic form, the requesting party must specifically request production of electronic or magnetic and specify the form in which the requesting party wants it produced. The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot—through reasonable efforts—retrieve the data or information requested or produce it in the form requested, the responding party must state an objection . . . .

Tex. R. Civ. P. 196.4.

In his initial responses to the requests for production and in his motion for protective order, Sakonchick did not object on the basis that the requests improperly sought electronic discovery. He also did not raise this as a concern in his motion for clarification,

17

modification, and extension to comply with discovery. It was not until after Overlook filed a motion seeking sanctions and to hold Sakonchick in contempt that he first contended that Overlook failed to specify the format in which the discovery should be produced. *See id.* R. 193.2(e) ("An objection that is not made within the time required . . . is waived unless the court excuses the waiver for good cause shown.").

At the hearing on the motion for sanctions, counsel for Overlook noted, "I'm not seeking electronic documents. I requested bank statements. I requested account statements for where they have funds . . . ." Sakonchick testified that because he had access to the statements online, he made no effort to obtain a physical version of the various statements. However, he also refused to produce the electronic statements because Overlook did not specifically request electronic versions of the statements.

"The purpose of Rule 196.4's specificity requirement is to ensure that requests for electronic information are clearly understood and disputes avoided." *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 314 (Tex. 2009) (orig. proceeding). Thus, a failure to follow Rule 196.4's specificity requirements as it concerns electronic discovery is not prejudicial if the party from whom discovery is sought clearly understands what is being requested. *See id.* at 314–15. Here, Sakonchick clearly understood that Overlook wanted certain financial statements, regardless of whether they existed in a physical or electronic format. Accordingly, Overlook's failure to specifically comply with Rule 196.4 did not excuse Sakonchick from producing the discovery sought. *See In re Shipman*, 540 S.W.3d 562, 567 (Tex. 2018) (orig. proceeding) ("Like the deleted emails sought in *Weekley*, it became 'abundantly clear' throughout the course of litigation and before trial-court intervention that [the requesting party] sought financial records

18

she believed were relevant to this case, whether they exist in a physical file cabinet or on an electronic device."). We overrule this sub-issue.

**D.     Reasonableness of Attorney's Fees**

Sakonchick also contends that the trial's award of $20,000 in attorney's fees was not supported by sufficient evidence.

First, Sakonchick argues that the trial court was required to consider lesser sanctions. However, payment of attorney's fees incurred in pursuing withheld discovery is a lesser, appropriate sanction than other alternatives. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992) ("It seems obvious that the Garcias would be prejudiced by the expenditure of attorneys' fees and expenses in pursuing motions to compel discovery and sanctions. . . . [R]eimbursement of those expenses would appear to be better calculated to remedy such prejudice than would death penalty sanctions."). Indeed, if the trial court finds that a party fails to comply with a proper discovery request or obey an order to provide discovery, it is generally a required sanction. Tex. R. Civ. P. 215.2(b)(8) (providing that "the court shall require the party failing to obey the [discovery] order or the attorney advising him, or both, to pay" attorney's fees unless exception applies).

Second, Sakonchick contends that Overlook failed to supply sufficient proof of its reasonable and necessary attorney's fees. The attorney for Overlook discussed his hourly rate, why he believed that to be a reasonable hourly rate, how much time he spent working on the matter, and why he believed that to be a reasonable amount of time. He also discussed the hourly rate of another attorney who performed work on the case. As proof of the fees incurred, Overlook offered and the trial court admitted into evidence a bill outlining the time attorneys for

Overlook spent working on the matter, what services were performed, the date those services were performed, and who performed which services. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). Sakonchick does not dispute this evidence other than by arguing that "the only fee bill exhibit submitted by Overlook[] does not separate the time spent adequately and suffers from block billing making it impossible to separate some time elements." Although block billing is generally disfavored, if time entries are adequately itemized, it does not render the evidence insufficient. *See Lederer v. Lederer*, No. 14-21-00012-CV, 2022 WL 11551156, at *7 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.). Here, most of the time entries Overlook produced reference a single task. As in *Lederer*, "[w]hen tasks are grouped under one time entry, they frequently relate to a particular service (e.g., reviewing a pleading, researching it, and communicating with the client)." *See id.* All that is required to support an award of attorney's fees is sufficient evidence to allow meaningful review of the particular services performed, who provided those services, and approximately when those services were performed. *See id.*; *Rohrmoos*, 578 S.W.3d at 502. Because the evidence in this case satisfies that standard, we conclude that the evidence was sufficient to support the award of attorney's fees, and we overrule this final sub-issue.

## IV.    CONCLUSION

We deny Sakonchick's petition for writ of mandamus. We affirm the trial court's sanction of $20,000 in reasonable and necessary attorney's fees.

20

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed and Petition for Writ of Mandamus Denied

Filed:   October 17, 2025