# Supreme Court of Texas

No. 24-0293

In re Greystar Development & Construction, L.P.; Gabriella Tower, LLC; and Greystar Development & Construction, L.P.—Gabriella Tower Contractor Series,

*Relators*

On Petition for Writ of Mandamus

**Argued September 11, 2025**

JUSTICE BUSBY delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Lehrmann, Justice Devine, and Justice Hawkins joined.

JUSTICE HUDDLE filed an opinion concurring in part and dissenting in part, in which Justice Bland, Justice Young, and Justice Sullivan joined.

A judgment debtor may suspend execution of the judgment against it while pursuing an appeal. For a money judgment, the debtor typically does so by posting a bond equal to the compensatory damages awarded plus interest for the estimated duration of the appeal and costs. TEX. CIV. PRAC. & REM. CODE § 52.006(a). But the Legislature has provided for lower bond amounts in certain cases, including a $25 million cap and a cap based on the debtor's net worth. *Id.*

§ 52.006(b). In this original proceeding involving a multi-debtor judgment, we consider whether the $25 million cap applies to (1) the amount of a bond posted by a judgment debtor or (2) the total amount of all bonds posted by all judgment debtors.

Applying the statute's plain language and definitions, we hold that the cap applies to a bond posted by a debtor. Read together, the relevant sections provide that "the amount of security"—defined as "*a bond . . . posted . . . by a judgment debtor* to suspend execution of the judgment during appeal"—"must not exceed . . . $25 million" or "50 percent of the judgment debtor's net worth." TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.006(b) (emphases added). This debtor-focused language is consistent with the law's general per-debtor approach to matters involving appellate rights, execution, and suspension of execution. On the other hand, straying from the text to adopt an all-debtor cap would create problematic inconsistencies for courts to resolve without any statutory guidance. The Legislature has been active in this area, striking a multifaceted policy balance between a judgment creditor's right to collect and a judgment debtor's right to appeal. To avoid altering this balance, we adhere to the words the Legislature chose.

The trial court here correctly followed the per-debtor approach, ruling that each debtor was required to post $25 million to suspend execution of the judgment against it. But the court abused its discretion by immediately invalidating the debtors' joint $25 million bond without allowing each debtor time to comply with its order regarding the amount

2

of security required before facing execution. We therefore conditionally grant relief.

## BACKGROUND

Kiersten Smith was killed when a construction crane collapsed during a storm and struck her apartment building. Her parents, Michele Williams (proceeding individually and on behalf of Smith's estate) and James Kirkwood, filed suit and proceeded to a jury trial on causes of action for negligence and gross negligence against several defendants: Greystar Development & Construction, LP; Greystar Development & Construction, LP—Gabriella Tower Contractor Series; Gabriella Tower, LLC (collectively, the Greystar Entities); and Bigge Crane and Rigging Co. The jury found that the three Greystar Entities engaged in a joint enterprise with each other and caused the death of Smith, resulting in approximately $360 million of non-economic harm. The jury also awarded a total of $500 million in exemplary damages, which the trial court reduced based on statutory caps. The trial court signed a judgment holding the Greystar Entities jointly and severally liable for over $360 million in compensatory damages and two of the entities severally liable for exemplary damages.

The Greystar Entities filed a $25 million joint supersedeas bond, stating that all three sought to appeal the trial court's judgment and suspend execution of the judgment pending appeal. Nearly six months later, Williams and Kirkwood (together, plaintiffs) filed an emergency motion for review of the joint bond in the trial court. The motion argued that the joint bond was insufficient as a matter of law and should be vacated because the $25 million bond cap applied to each defendant

3

individually and did not allow the three Greystar Entities to post a single bond in that amount.  In a reasoned order following a hearing, the trial court granted plaintiffs' motion in part and ordered that the joint bond "could only potentially suspend the judgment against one of the three judgment debtors" and that "[u]nless and until Defendants file individual bonds and/or identify which Defendant the current bond shall apply to, no valid bond is in place."

In response to the trial court's bond order, the Greystar Entities filed a notice designating the joint bond as applicable to Greystar Development & Construction, LP.  They also filed a motion for appellate review of the trial court's order.  Texas Rule of Appellate Procedure 24.4(a) allows courts of appeals to review by motion (1) the sufficiency or excessiveness of the amount of security, (2) the sureties on any bond, (3) the type of security, (4) the determination whether to permit suspension of enforcement, and (5) the trial court's exercise of discretion under Rule 24.3(a) to order or modify the amount and type of security after its plenary power expires.  The Greystar Entities sought review under subsections (a)(1) and (5), arguing that the trial court ordered an excessive amount of security by applying the $25 million cap per debtor and exceeded its authority under Rule 24.3(a) by invalidating the bond.

After granting a temporary stay, the court of appeals denied the motion and affirmed the trial court's order, holding that the $25 million bond cap applies per debtor and that Texas Rule of Appellate Procedure 24 authorized the trial court to order that the joint bond was invalid. 716 S.W.3d 747, 755-58 (Tex. App.—Dallas 2024, order on mot.).  This original proceeding followed under Texas Rule of Appellate Procedure

4

24.4(a), which permits review of the court of appeals' ruling by petition for writ of mandamus in this Court. The Greystar Entities also filed an emergency motion for temporary relief, which we granted.

The Greystar Entities' mandamus petition asks this Court to decide whether the trial court's order declaring the $25 million joint bond invalid as to two Greystar Entities violated Section 52.006(b)(2) of the Texas Civil Practice and Remedies Code and Texas Rule of Appellate Procedure 24.3(a).[1] The petition identifies a split among Texas courts regarding the application of Section 52.006(b)(2). One court reached the same conclusion as the court of appeals and applied the $25 million cap to each judgment debtor. *See O'Quinn v. Wood*, No. 12-08-00011-CV, 2009 WL 2367133, at *6 (Tex. App.—Tyler June 10, 2009, order on mot.). Another court decided differently, construing Section 52.006(b)(2) to cap the total security posted by all debtors. *Huff Energy Fund, L.P. v. Longview Energy Co.*, 510 S.W.3d 479, 485 (Tex. App.—San Antonio 2014, order on mot.).

## STANDARD OF REVIEW

We review for abuse of discretion the trial court's rulings regarding the amount of security and modification of the required bond under Texas Rule of Appellate Procedure 24.3(a). *See* TEX. R. APP. P. 24.4(a). Mandamus relief is appropriate when a trial court abuses its discretion through an error of law or erroneous application of law to fact. *In re Kay*, 715 S.W.3d 747, 750 (Tex. 2025). Because Rule 24.4 expressly

---

[1] The Court also received a brief from amicus curiae, the Texas Civil Justice League, in support of a per-judgment application of Section 52.006(b)(2). The Court appreciates the assistance of the amicus.

5

authorizes this Court to review supersedeas bond orders by mandamus, a petitioner seeking relief under that rule is not required to show it lacks an adequate appellate remedy to be entitled to mandamus relief. *Id.* at 750 n.7; *see also In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 176 (Tex. 2013).

## ANALYSIS

### I.  The $25 million cap on the amount of a supersedeas bond applies per judgment debtor.

We first consider the Greystar Entities' challenge to the trial court's ruling that the amount of security was insufficient. We conclude that the trial court did not abuse its discretion. Read together, the relevant statutes provide that "the amount of security"—defined as "*a bond . . .* posted *. . .* by *a judgment debtor* to suspend execution of the judgment during appeal"—"must not exceed . . . $25 million" or "50 percent of the judgment debtor's net worth." TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.006(b) (emphases added). This language shows that the $25 million cap applies to a bond posted by a debtor to suspend execution of the money judgment against it, not to all bonds posted by all debtors who are parties to the judgment. The per-debtor cap aligns with the right to appeal belonging to an individual debtor, a judgment creditor's right to collect its judgment from each individual debtor, and the long-settled requirement that each appealing debtor seeking to stop collection pending appeal must post security for the full amount it owes under the judgment.

The Greystar Entities' contrary position—that the cap applies collectively to bonds posted by all debtors under a judgment—is in

6

tension not only with the statute's text but also with the overall scheme of statutes and rules governing supersedeas practice. Their position would also require courts to craft exceptions without textual guidance just to become workable.

In support of their position, the Greystar Entities urge that the cap's underlying policy purpose is to make supersedeas more easily available. But a per-debtor application of the statute also serves that purpose. We see no compelling reason to conclude that the Legislature wanted courts to pursue supersedeas reduction to the maximum possible extent despite contrary indications from text, context, and established practice when the statute was enacted. Moreover, the statutory bond cap at issue is but one of multiple paths in the Legislature's comprehensive approach to permitting judgment debtors to suspend enforcement of the judgment without superseding the full amount of liability. Other paths will lead to lower bonds in many cases; the Greystar Entities do not explain why this path must carry the full weight of any policy.

### A. Like other post-judgment procedures, supersedeas is party-specific.

Before examining the statute's text in more detail, we set the stage by explaining the post-judgment procedures of which it is a part, which provide important context that helps inform the statute's meaning. *See JPMorgan Chase Bank, N.A. v. City of Corsicana*, ___ S.W.3d ___, 2026 WL 1261549, at *4-5 (Tex. May 8, 2026). We presume that the Legislature uses statutory language with complete knowledge of existing law. *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 106-07

7

(Tex. 2021). This presumption requires that we look at the background body of law when construing statutes. *Id.* at 107. We similarly rely on "familiar principles" that have developed over time to resolve "common question[s]" in an area of the law. *City of Denton v. Grim*, 694 S.W.3d 210, 215 (Tex. 2024).

Once a trial court signs a final money judgment, various judgment execution and enforcement procedures are available to a judgment creditor.[2] Correspondingly, judgment debtors may avail themselves of procedures to delay execution and enforcement. For example, a judgment creditor may request a writ of execution 30 days after a final judgment is signed. TEX. R. CIV. P. 627. But if the judgment debtor files a motion for new trial, the writ cannot issue until 30 days after the motion has been ruled on or overruled by operation of law. *Id.* A judgment creditor may also appeal the trial court's judgment, but perfecting an appeal has not traditionally suspended enforcement of a final order or prevented execution. *See Bills v. Scott*, 49 Tex. 430, 432-33 (1878).

The procedures available to a debtor to delay execution and enforcement—and to a creditor pursuing them—are specific to the debtor against whom execution and enforcement are sought. This is true for writs of execution and garnishment, a judgment debtor's appellate rights, the amount collectible under a judgment, and supersedeas bonds.

Execution and the corresponding writ are commonly used to collect a money judgment against a particular defendant. 5 McDonald

---

[2] *See generally* 5 McDonald & Carlson, TEX. CIV. PRAC. § 31:2 (2d. ed. 2026).

8

& Carlson, TEX. CIV. PRAC. § 31:22 (2d. ed. 2026).  Once the writ issues, the sheriff or officer receiving it will "call upon the defendant" to provide an opportunity to designate non-exempt assets to be sold in satisfaction of the execution.  TEX. R. CIV. P. 637.  If the defendant designates too little, "the officer shall levy the execution upon any property of the defendant subject to execution."  *Id*.  If the officer's sale returns enough money to satisfy the execution, "the officer shall immediately pay the surplus to the defendant."  TEX. CIV. PRAC. & REM. CODE § 34.047(c).

Writs of garnishment are similarly specific to an individual judgment debtor: they require the garnishee to identify what it owes to a specific defendant, or what the garnishee has in its possession belonging to that defendant.  TEX. R. CIV. P. 659.  The form garnishment writ in the Rules of Civil Procedure even specifies a single defendant whose assets are subject to the writ.  *See* TEX. R. CIV. P. 661.

Appeals are also party-specific.  A party seeking to alter a trial court's judgment "must file a notice of appeal," whether individually or jointly, and cannot be granted more favorable relief from the court of appeals than from the trial court unless it does so.  TEX. R. APP. P. 25.1(c).  One consequence of requiring each party seeking relief from a trial court's multi-party judgment to file its own notice of appeal is that a nonappealing party generally remains subject to the adverse judgment even if an appealing party wins reversal.  *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982).  There can also be differing appeal outcomes for aligned parties, leaving some of them liable under a judgment that was reversed as to their co-parties.

9

The amount collectible under a judgment is determined in the same way. A finding of joint and several liability among multiple judgment debtors allows a judgment creditor to collect the full amount of the judgment against any one of them. *See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 872 (Tex. 2017). Correspondingly, a finding of only several liability limits the judgment creditor to collecting from each debtor only the portion of the damages for which that debtor is responsible. TEX. CIV. PRAC. & REM. CODE § 33.013(a). Each judgment debtor's liability for a damages award—and a judgment creditor's right to collect against that debtor—thus turns on what damages the judgment awards as to that debtor.

It follows that supersedeas practice is also debtor-specific: "a judgment debtor may supersede the judgment by . . . filing with the trial court clerk a good and sufficient bond" or by other prescribed means. TEX. R. APP. P. 24.1(a)(2). But a supersedeas bond filed by one party provides no protection from enforcement and execution to parties who have not filed a supersedeas bond. *Valerio v. Laughlin*, 307 S.W.2d 352, 353 (Tex. Civ. App.—San Antonio 1957, orig. proceeding). A judgment may therefore be enforced even against parties whose appeal of the judgment is pending if they have not superseded the judgment. *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003).

The amount of security required to supersede a money judgment has changed over time. Texas's first supersedeas statute required at least double the amount of the judgment, interest, and costs. *See In re Longview Energy Co.*, 464 S.W.3d 353, 357 (Tex. 2015) (citations omitted). This sum was reduced to "the amount of the judgment, plus

10

interests and costs" when the Texas Rules of Civil Procedure were promulgated. *Id.* at 357-58. The rules were later amended to permit trial courts to disallow supersedeas in certain cases when a judgment did not involve money. Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4*, 46 S. TEX. L. REV. 1035, 1057 (2005) (citations omitted).

We later amended former Texas Rule of Appellate Procedure 47, a predecessor to current Rule 24, allowing alternate security even for appeals from money judgments. *See Isern v. Ninth Court of Appeals*, 925 S.W.2d 604, 605-06 (Tex. 1996) (orig. proceeding). The Legislature decided to address the issue again, adopting a new standard for alternate security when it enacted Chapter 52 of the Civil Practice and Remedies Code. *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 52.002 (repealed 2003)). Then came Section 52.006 in 2003, which includes the $25 million bond cap at issue in this proceeding. We have observed that this section was enacted to strike "a new balance between the judgment creditor's right in the judgment . . . against the judgment debtor's right to . . . appellate review." *Nalle Plastics*, 406 S.W.3d at 170 (quoting Carlson, *supra*, at 1038).

The $25 million bond cap in Section 52.006(b)(2) is one of many options now available to any judgment debtor that believes it will suffer harm if required to post the full amount of compensatory damages, interest, and costs pending appeal. Notably, all the other options are debtor-specific. A judgment debtor can alternatively post 50% of its net worth under Section 52.006(b)(1), subject to a judgment creditor's right to contest the net-worth calculation under Texas Rule of Appellate

11

Procedure 24.2(c)(3). Another path is to show the trial court that posting the full amount will likely cause the judgment debtor to suffer substantial economic harm. TEX. CIV. PRAC. & REM. CODE § 52.006(c). And a judgment debtor with a net worth of less than $10 million can post alternate security to supersede a money judgment. *Id.* § 52.007.[3] Whether any of these procedures ultimately applies to a judgment debtor in a particular case depends on the amount of the individual debtor's liability, its net worth, and the harm it might suffer if required to post a full bond.

Although this original proceeding raises a new question regarding the application of Section 52.006(b)(2), the general subject of that statute and the broader scheme of statutes and rules address familiar issues regarding enforcement of a money judgment against a debtor. Judgment debtors have significant (and increasingly accessible) procedural protections against judgment enforcement during appeal, but judgment creditors may seek to enforce their money judgments as to any debtor who has not availed itself of these protections. Whether a judgment creditor can collect on a judgment against any debtor is a party-specific inquiry determined by the actions taken by that judgment debtor. This is the backdrop against which we construe the $25 million statutory bond cap. *See Amazon.com, Inc.*, 625 S.W.3d at 107.

---

[3] Other jurisdictions have adopted different approaches to striking this balance. For example, federal courts tax the premiums a judgment debtor pays for a supersedeas bond against the judgment creditor if the debtor wins reversal of the judgment. *See* FED. R. APP. P. 39(a)(3), (f)(3); *City of San Antonio v. Hotels.com, L. P.*, 593 U.S. 330, 335-36 (2021).

## B. The plain language of Section 52.006(b)(2) imposes a per-debtor cap.

When interpreting statutes, we give the words chosen by the Legislature their plain meaning. *Am. Pearl Grp. v. Nat'l Payment Sys., L.L.C.*, 715 S.W.3d 383, 387 (Tex. 2025). We must also read these words in context and use any definitions the statute provides. *GEO Grp. v. Hegar*, 709 S.W.3d 585, 591 (Tex. 2025). A statute's "operative force" "derives from its text, not from the purpose it was thought to serve at the time it was enacted." *Paxton v. Am. Oversight*, 716 S.W.3d 535, 545 (Tex. 2025).

Section 52.006(b) of the Civil Practice and Remedies Code provides:

> Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million.

"[S]ecurity" is defined as "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to suspend execution of the judgment during appeal of the judgment." TEX. CIV. PRAC. & REM. CODE § 52.001.

The parties dispute whether Section 52.006(b)(2) sets $25 million as (1) the maximum amount of security that can be required for a judgment debtor to suspend execution of a money judgment, or (2) the maximum amount of security that can be required for any money judgment. Read together, the provisions just quoted support the first interpretation. Incorporating the definition of security, Section 52.006(b)(2) provides that "when a judgment is for money, the amount

13

of . . . ***a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment*** . . . must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.006(b) (emphases added).

In short, the amount of a bond posted by a debtor must not exceed the lesser of 50% of the debtor's net worth or $25 million. *Id.* § 52.006(b). This language sets a cap on the amount of a bond posted by a debtor, not on the amount of security for the judgment. And whether the $25 million cap or the net-worth cap applies to a particular debtor depends on that debtor's net worth. The $25 million bond will be the lesser option only for debtors with net worths exceeding $50 million; all other debtors must proceed under the net-worth alternative when Section 52.006(b) applies.

This textual signal that the cap applies on a per-debtor basis aligns with the right to appeal a judgment belonging to an individual debtor and the creditor's right to collect that judgment from each individual debtor. Applying the cap on a per-debtor basis also aligns with the requirement that each appealing debtor seeking to stop collection must post security for the full amount it owes under the judgment. Logically, whether the amount of a bond is sufficient to suspend execution should likewise be judged per debtor, including any applicable net-worth or dollar-value caps. Nothing in the statute indicates otherwise.

The Greystar Entities advocate a different interpretation, arguing that Section 52.006(b)(2) unequivocally applies a $25 million supersedeas cap to the judgment as a whole. This reading improperly

14

sidelines the Legislature's definition of security and changes the subject matter of the statute from the "amount of . . . a bond . . . posted . . . by a judgment debtor to suspend execution" to the amount of security for a judgment. *Id.* §§ 52.001, 52.006(b). But the statute does not address the amount of "security for a judgment." It says that when there is a money judgment, the amount of a bond posted by a debtor to suspend execution of that judgment must not exceed the lesser of two alternative amounts.

Nor are we persuaded that the omission of the words "judgment debtor" in Section 52.006(b)(2) means that the $25 million cap applies to judgments rather than judgment debtors. The Greystar Entities assert that had the Legislature sought to apply the cap to each judgment debtor, it could have used the term "judgment debtor" in Section 52.006(b)(2) as it did in (b)(1)'s net-worth cap. Yet that is precisely what the Legislature did by defining "security" as "a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment during appeal of the judgment." *Id.* § 52.001. In this holistic reading, "the" judgment debtor whose net worth is used to cap the bond refers back to "a" judgment debtor who posts a bond.

The Legislature's choice to repeat the term "judgment debtor" in (b)(1) is also unsurprising because the net-worth prong is a percentage calculation, and any percentage calculation must be based on some other number. For example, Section 52.006(b)(2) could have set its alternative cap based on a percentage of the judgment, similar to the historical requirement to post twice the amount of damages awarded. But the (b)(2) cap is not a percentage calculation: it is a flat $25 million cap, so there was no need for the Legislature to repeat that the cap applies to

15

the "amount of . . . a bond . . . posted by a judgment debtor." *Id.* §§ 52.001, 52.006(b).

Finally, the Greystar Entities point to the title of Section 52.006, "Amount of Security for Money Judgment," as support for applying the cap to all security posted for the judgment. This argument fails to account for the definition of "security," which applies throughout Chapter 52. *See id.* § 52.001. When we incorporate the definition of security into the title, as we must, it reads: "Amount of . . . a Bond Posted . . . by a Judgment Debtor to Suspend Execution of the Judgment during Appeal of the [Money] Judgment." Yet even if the title of Section 52.006 supported a collective application of the $25 million cap, that would carry no weight given the plain language of the statute. *See* TEX. GOV'T CODE § 311.024; *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 47 n.4 (Tex. 2015).

### C. Selectively pluralizing one statutory noun is contrary to the pluralization canon and background principles of joint bonds.

The Greystar Entities next argue that the singular reference to a judgment debtor in the definition of "security" is misleading because the singular encompasses the plural under Texas Government Code Section 312.003. Under this view, the $25 million bond cap applies to a bond or deposit posted by judgment debtors. Our dissenting colleagues also embrace this selective pluralization of the statutory text. *Post* at 5-6 (Huddle, J., dissenting).

But if we construe "a judgment debtor" to include the plural, we must do the same for "amount" and "bond," which results in a $25 million cap applying to the amounts of bonds posted by judgment

16

debtors. *See State v. T.S.N.*, 547 S.W.3d 617, 621 (Tex. 2018) ("[I]f 'the offense' is to include the plural, . . . then logically and consistently 'the arrest' must also include the plural."). Pluralizing each of these singular nouns still links the cap to each bond—and the judgment debtor posting it—rather than capping the total amount of all security for a final judgment. In other words, even if all nouns are pluralized, each debtor must still post a bond of $25 million. And rather than resolving the question presented, pluralizing the singular "judgment debtor" raises additional questions about what other singular terms throughout Chapter 52 must be pluralized and how to assess the many resulting permutations.

Moreover, like the federal Dictionary Act's similar provision, our statutory pluralization canon is "obviously . . . not one to be applied except where it is necessary to carry out the evident intent of the statute." *First Nat'l Bank v. Missouri*, 263 U.S. 640, 657 (1924). Specifically, statutory pluralization canons "do[] not transform every use of the singular 'a' into the plural 'several,'" as the Greystar Entities and the dissent urge here. *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021). "Instead, [the canon] tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things." *Id.* Thus, applying the canon to a federal statute requiring the government to serve "a notice to appear" on an individual it seeks to remove from the country merely "allows the government to send multiple notices to appear to multiple people." *Id.* Similarly, applying the canon to this statute capping the amount of "a bond . . . posted . . . by a judgment

17

debtor" merely shows that its use is not limited to single-debtor cases; it also allows multiple capped bonds to be posted by multiple debtors.

The Greystar Entities also argue for a plural reading of the singular "judgment debtor" by pointing to the Legislature's use of an indefinite article. The net-worth cap in Civil Practice and Remedies Code Section 52.006(b)(1) is calculated as 50% of "***the*** judgment debtor's net worth," while the definition of "security" in Section 52.001 refers to "a bond or deposit posted . . . by ***a*** judgment debtor." (Emphases added.) According to the Greystar Entities, using the definite article *the* in Section 52.006(b)(1) restricts the inquiry to a single judgment debtor, while the indefinite article *a* in Section 52.001 means "any." But construing the cap to apply to "any" judgment debtor still results in a per-debtor application rather than establishing a maximum amount of all security for a final judgment.

The dissent seeks to selectively pluralize "a judgment debtor" to support its own reading that the $25 million bond cap applies neither per-judgment nor per-debtor, as the parties advocate, but per bond. In the dissent's view, "[w]hat is capped is . . . the amount of *a bond*." *Post* at 4. To the contrary, the text specifies that what is capped is the amount of "a bond . . . posted . . . by *a judgment debtor*." TEX. CIV. PRAC. & REM. CODE § 52.001 (emphasis added). The statute does not mention joint bonds or provide any indication that they were contemplated. And as discussed, the pluralization canon does not support the dissent's selectively plural reading that the $25 million cap applies to a single bond posted jointly by multiple debtors.

Thus, any support for the dissent's reading must come from background principles of Texas law and procedure regarding joint bonds. We presume that the Legislature knows those principles and will alter them expressly if it intends to do so. *See Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 592 (Tex. 2025). Here, the Legislature has remained silent about joint bonds, and the background principles have been contrary to the dissent's view for more than a century: multiple judgment debtors may post a joint bond, but doing so does not change the amount that must be posted.

We explained in *McFarlane v. Howell* that "[e]ach [judgment debtor], who desires to supersede the judgment, is required to give an appeal bond, and each may give a separate bond; and, while they may give a joint bond, . . . it was never intended that by doing so either they or their sureties could change their liability [on the bond] in the appellate court." 42 S.W. 853, 854-55 (Tex. 1897). As previously discussed, this principle is consistent with every other feature of post-judgment practice and every other bond reduction the Legislature has passed, all of which operate on a per-debtor basis.

Jointly liable debtors have never been permitted to post separate bonds that provide the required security only by combining all bond amounts, as that practice would leave a judgment creditor without adequate security if the judgment is affirmed only as to some of the debtors that are party to the piecemeal bonds. *Fortune v. McElhenney*, 645 S.W.2d 934, 935 (Tex. App.—Austin 1983, no writ). For the same reason, when jointly liable judgment debtors file a joint bond, that bond must obligate the surety for the entire amount of the judgment, interest,

19

and costs if the judgment is affirmed as to any of the judgment debtors filing the bond. *Id*.

This principle protects the creditor's right to recover the full amount of the judgment, costs, and interest pending appeal without requiring multiple judgment debtors to over-secure the judgment creditor by posting security that exceeds the maximum amount the judgment creditor could ultimately recover. Under this principle, the judgment creditor and jointly liable debtors end up in the same position after an appeal regardless of whether debtors filed separate bonds or a joint bond. The judgment creditor is not "entitled to recover the amount of the principal of [a supersedeas bond] as liquidated damages," but only (1) the amount of the judgment itself (in the case of a money judgment) plus costs, and (2) compensation for loss resulting from the delay of an unsuccessful appeal (such as interest). *State v. Watts*, 197 S.W.2d 197, 199 (Tex. Civ. App.—Austin 1946, writ ref'd). The judgment creditor's eventual recovery on the bond(s) is thus based on the amount of the judgment as affirmed. Correspondingly, judgment debtors may proceed under a joint bond so long as that bond results in the same liability for each debtor (in the event the judgment is affirmed) as if they had proceeded under separate bonds. *McFarlane*, 42 S.W. at 854-55.

In contrast, the dissent's atextual view that $25 million is the maximum amount of any one bond—whether posted by a single debtor or jointly by multiple debtors—would place the plaintiffs in a worse position and the Greystar Entities in a better one after an unsuccessful appeal than if the Greystar Entities had posted separate bonds capped

20

at $25 million each. Texas joint bond practice provides no support for that result.

Another anomalous feature of the dissent's approach is that the amount each jointly liable debtor must post varies depending on whether that debtor gets along well enough with one or more of its co-debtors to be able to agree on posting a joint bond and how much each debtor will contribute. If so, each debtor finances only its agreed portion of the $25 million joint bond; if not, each debtor must post its own $25 million bond. Nothing in the statute indicates that the Legislature intended the cap to fluctuate depending on the inter-debtor dynamics of each case.

> **D.    A collective construction of the bond cap would require judicially crafted exceptions to Chapter 52's reticulated scheme.**

A per-debtor bond cap not only comports with the statute's plain language and general principles of supersedeas practice, appeals, and judgment collection, it also allows trial courts to apply the statue without additional court-crafted policy overlays. "[W]e respect policy-laden statutes as written and give wide leeway to the innumerable trade-offs reflected therein." *J-W Power Co. v. Sterling Cnty. Appraisal Dist.*, 691 S.W.3d 466, 474 (Tex. 2024) (citations omitted). Adopting a cap on all bonds posted to suspend execution of a judgment would lead to results that even the Greystar Entities admit are wrong, forcing courts to craft atextual exceptions to make that interpretation work.

For example, if the bond cap applies per judgment, then "the judgment is superseded" as to all judgment debtors once the cap is met, and all enforcement "must be suspended." TEX. R. APP. P. 24.1(f). Thus,

21

one debtor posting $25 million would protect even judgment debtors who have not appealed against execution for the duration of the appeal. And under the net-worth cap, one insolvent debtor posting 50% of its net worth—that is, one dollar—would suspend execution of the judgment as to all judgment debtors (even ones that have not appealed).

The Greystar Entities concede that these results are incorrect, but they offer two arguments for avoiding them: (1) each debtor is still required to be obligated on some sort of bond even after the $25 million cap on all bonds is reached; and (2) the net-worth cap in subsection 52.006(b)(1) applies per debtor even though the $25 million cap does not. These arguments are in no way consistent with the statute's text. Requiring other debtors to post a bond through court-crafted rules after a per-judgment cap is met would violate the Legislature's mandate that the language of Section 52.006(b) controls "[n]otwithstanding any other law or rule of court." And applying the $25 million cap on a per-judgment basis while applying the net-worth cap on a per-debtor basis would require this Court to conclude that the language of Section 52.006(b) has different meanings depending on whether it is read in conjunction with subsection (b)(1) or (b)(2).

The inconsistency in this argument is apparent when one recognizes that the statutory words the parties read differently appear in the portion of 52.006(b) preceding the alternative cap amounts numbered (1) and (2). The parties do not disagree on the meaning of "50 percent of the judgment debtor's net worth" or "$25 million" under subsections (b)(1) and (b)(2), and these statutory phrases alone cannot answer the question whether the $25 million cap applies to each debtor

or collectively to all debtors posting security to suspend execution of a judgment. That answer comes from Section 52.006(b)'s prefatory language that "the amount of security must not exceed" the two alternative caps, with "security" defined as "a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment." TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.006(b).[4]

The Greystar Entities center their reading of 52.006(b) on the "amount of security" posted with respect to any "judgment." Plaintiffs' reading also centers on the "amount of security" but emphasizes that security is defined in Section 52.001 as "a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment." Under either side's reading, these words in 52.006(b) should apply the same way to (b)(1) and to (b)(2).

But the Greystar Entities advocate a per-judgment application of (b)(2)'s $25 million cap and a per-debtor application of (b)(1)'s net-worth cap. We decline to construe the statutory phrase "amount of security" to change meanings when applied to the different subsections at the end of Section 52.006(b) such that the $25 million cap applies collectively to all bonds posted by all judgment debtors even though all agree that the same operative language establishes a per-debtor net-worth cap.[5]

---

[4] As the dissent points out, we have said that $25 million is "an absolute cap." *Longview Energy*, 464 S.W.3d at 358. But the statute's text tells us that it is an absolute cap on the amount of *a* bond posted by *a* debtor.

[5] The dissent attempts to avoid the absurd results that will follow for Section 52.006(b)(1)'s net-worth cap in two different ways. *Post* at 8 n.1. The first way is by adding up the calculation for each judgment debtor to determine a cumulative net-worth cap under Section 52.006(b)(1); of course, applying that same methodology to Section 52.006(b)(2)'s flat cap results in the same

23

Construing "security" to refer to the total security for a judgment, as the Greystar Entities urge, or to "the amount of a bond posted by multiple debtors," as the dissent urges, also transforms the otherwise straightforward readings of Section 52.006(a) and 52.006(c). Section 52.006(a) sets the default amount of security for a money judgment at the amount of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. Allowing multiple debtors to meet this requirement through piecemeal bonds would leave the judgment creditor without adequate security if the judgment is affirmed as to only some judgment debtors found jointly and severally liable. *But see Fortune*, 645 S.W.2d at 935 (permitting aggregate bonds only if surety is obligated up to full amount if judgment is affirmed as to any party to the bond).

A greater problem arises under Section 52.006(c)'s provision permitting a trial court to lower "the amount of the security" to avoid causing substantial economic harm to a judgment debtor. If "security" means a bond posted by judgment debtors, one judgment debtor could use the $25 million joint bond as a starting point to argue that the amount should be reduced further, which would benefit other parties to the joint bond who have not made the required showing under Section 52.006(c).

---

$75 million bond that we hold is required here. The second way is by presuming without explanation that the statute "prohibits" any judgment debtor from relying on another's net worth even though that is the obvious result of the dissent's view that Section 52.006 caps "the amount of *a bond*" regardless of the number of parties to the bond and whether the parties proceed under subsection 52.006(a), 52.006(b)(1), 52.006(b)(2), or 52.006(c). *Post* at 5.

Nothing in the text supports a special construction of "security" that applies only to Section 52.006(b)(2) but not the remainder of the Chapter. Following the plain language avoids the problems created when one statutory term—"a judgment debtor"—is selectively singled out for pluralization only one of the many times it appears in a statute.

Of course, applying the $25 million cap on a per-debtor basis might result in judgment debtors collectively posting an amount of security exceeding the amount of compensatory damages, costs, and post-judgment interest awarded in the judgment. But as previously explained, that result is a common feature of Texas supersedeas practice that occurs not because of how the bond cap applies but based on the longstanding principle that all parties appealing from a money judgment must post their own bond. *See* 6 McDonald & Carlson, TEX. APP. PRAC. § 14:10 (2d ed. 2026) (citing *Valerio*, 307 S.W.2d at 353). Each party's bond must secure the full amount for which it is jointly and severally liable; otherwise, a judgment creditor is not secured for the entire amount of compensatory damages if the award is affirmed as to only one jointly liable judgment debtor. *Gullo-Haas Toyota, Inc. v. Davidson, Eagleson & Co.*, 832 S.W.2d 418, 419-20 (Tex. App.—Houston [1st Dist.] 1992, no writ).

As discussed above, jointly liable judgment debtors can alternatively file a joint bond covering the full amount of compensatory damages, costs, and post-judgment interest, provided that the surety is liable for the full amount if the judgment is affirmed as to at least one of the judgment debtors. *Fortune*, 645 S.W.2d at 935. This option permits each judgment debtor to supersede the full amount of its

25

potential liability without over-securing the judgment beyond what the judgment creditor could receive if a money judgment is affirmed.[6] Or, when the amount of each judgment debtor's liability falls under a cap, Section 52.006(b) allows a joint bond obligating each debtor to secure its capped amount (here, $25 million) and setting the surety's maximum liability at the sum of the capped security for all parties to the joint bond (here, $75 million).

### E. There is no compelling policy reason to favor a collective interpretation that is incompatible with statutory text and context.

Any application of the bond cap in this proceeding results in a significant reduction for any Greystar Entity seeking to suspend enforcement of the judgment pending appeal. Absent some cap, each would have to post a bond of $360,012,006 plus post-judgment interest for the duration of the appeal (tens of millions today), or a joint bond in that amount provided that the surety is liable for the entire amount if the judgment is affirmed as to any Greystar Entity. *See Fortune*, 645 S.W.2d at 935.

Our conclusion that the cap applies on a per-debtor basis reduces the bond amount from more than $400 million to $75 million total ($25 million per debtor), making supersedeas far "more easily available"

---

[6] Thus, in the dissent's hypothetical case (*post* at 10), background principles of Texas law and procedure regarding joint bonds would allow the five defendants to post a joint bond of $100 million—the amount of the judgment—plus interest and costs that obligates the surety to pay if the judgment is affirmed as to any of the defendants. *See Fortune*, 645 S.W.2d at 935.

than without the cap. *See Longview Energy*, 464 S.W.3d at 358-360. Even if the jury had not found a joint enterprise, each Greystar Entity's several liability would otherwise have required a bond ranging from $36 million to $198 million (plus interest for the estimated duration of the appeal) based on the jury's proportionate responsibility findings.

Under the Greystar Entities' collective view of the cap, if multiple Greystar Entities lose their merits appeals, each would be obligated only on up to one-half or one-third of a $25 million joint bond. Applying the cap in this way would of course make it easier still for each debtor to pursue its appeal, but we cannot favor an interpretation in tension with the text simply because it maximally protects a judgment debtor's appellate rights. "[N]o statute pursues a single policy at all costs, and we are not free to rewrite this statute (or any other) as if it did." *Advocate Christ Med. Ctr. v. Kennedy*, 605 U.S. 1, 19 (2025) (quoting *Bartenwerfer v. Buckley*, 598 U.S. 69, 81 (2023)). Providing the Greystar Entities this additional relief would require not only misreading the plain text of 52.006(b) but also judicially crafting atextual exceptions to avoid strange results that even the Greystar Entities renounce.

The availability of other procedures making supersedeas more easily available—including the net-worth cap, lesser security upon a showing of substantial harm, and alternate security for debtors with net worths less than $10 million—also cautions against rewriting the $25 million cap to further protect debtors' appellate rights. Together, these procedures reflect legislative policy decisions striking a multifaceted balance between the creditor's right to collect a judgment and the debtor's right to challenge it. The statutory text of each

procedure, including the $25 million cap, is the best evidence of those policy preferences. We may not stray from the text to elevate a problematic interpretation that maximally implements a policy, and we should be especially reluctant to do so when the alternative interpretation advances the same policy. Doing so would risk upsetting the balance the Legislature sought to strike through this reticulated scheme.

The other policy considerations the Greystar Entities ask us to consider include bad pleading incentives for plaintiffs, inadequate protection of the right to appeal without a per-judgment cap, chilling effects on appellate rights, and piecemeal execution on a judgment. None are persuasive.

Texas Rules of Civil Procedure 13, 91a, and 166a deter plaintiffs from filing frivolous pleadings against unrelated parties. And far from chilling appeals, a per-debtor cap lowers the bar for superseding a money judgment—here, by more than 90% per debtor given that each was found jointly liable for compensatory damages of over $360 million. The trial court might have afforded even greater relief under Texas Rule of Appellate Procedure 24.2(b) had it been sought. And rather than prolong and complicate judgment execution and collection, allowing judgment creditors to collect against jointly liable judgment debtors who have not superseded the judgment will reduce any joint liabilities that remain after appeal under the one-satisfaction rule.

If we decided this case based on whether a per-debtor or all-debtor bond cap best implements the policies underlying Section 52.006 and the other supersedeas-reduction statutes—which we may not given the

28

text's mandate—it is not apparent which interpretation would prevail. And we decline to lob a guess: the text of Section 52.006(b)(2) is the best evidence we have of the Legislature's policy preference, and that text sets a per-debtor bond cap.

*      *      *

Having concluded that the cap applies per debtor, we hold that the trial court did not abuse its discretion in requiring each of the Greystar Entities to post a $25 million bond. The bond cap prohibits a trial court from requiring "a bond or deposit posted . . . by a judgment debtor to suspend execution of the judgment during appeal of the judgment" in an amount exceeding $25 million. TEX. CIV. PRAC. & REM. CODE §§ 52.001, 52.006(b)(2). The trial court here found that a joint bond filed by all three Greystar Entities capping the surety's liability at $25 million "could only potentially suspend the judgment against one of the three judgment debtors."

This finding was correct under Section 52.006(b)(2). Accordingly, the trial court did not abuse its discretion in ruling the joint bond insufficient as to two of the three Greystar Entities.

## II. The trial court clearly abused its discretion when it immediately invalidated the joint bond upon ruling it insufficient.

The Greystar Entities also ask us to consider whether the trial court, having ruled the bond insufficient, abused its discretion in ordering that "no valid bond [was] in place" for at least two Greystar Entities. This order fell outside the scope of the trial court's continuing jurisdiction over supersedeas matters under Texas Rule of Appellate Procedure 24.3(a) and is not otherwise authorized under Rule 24.1(e).

The trial court also abused its discretion by not allowing the Greystar Entities a reasonable time to comply with the court's ruling regarding the amount of security required before facing execution.

Rule 24.1(e) generally authorizes trial courts to make "any order necessary" to protect judgment creditors against loss or damage that might be caused by a judgment debtor's appeal. Rule 24.3(a) is narrower and defines the scope of the trial court's continuing jurisdiction to order and modify the amount of security and decide the sufficiency of sureties after its plenary power expires. Plaintiffs argue that both rules authorize the trial court's bond order. We disagree.

The trial court's order determined the amount of security required from each judgment debtor to suspend execution of the judgment, but it also went beyond that by ordering that "no valid bond [was] in place" immediately upon the trial court's determination that the bond was insufficient. This order falls outside the scope of the trial court's continuing jurisdiction under Rule 24.3(a) to order or modify the amount or type of security required to continue suspension of the judgment's execution.

Had the trial court given each Greystar Entity a reasonable time to post a separate bond of $25 million (or a joint bond guaranteeing up to $75 million if the final judgment is affirmed as to all entities on appeal), such an order would have been authorized under Rule 24.3(a)(1). But the court's order did more than order the amount of security: it also declared that the Greystar Entities' joint bond was not valid, thereby lifting the suspension of execution immediately. Because Rule 24.3(a)(1) does not authorize trial courts to invalidate an

insufficient bond without any opportunity to cure that insufficiency, we cannot uphold the trial court's decision to invalidate the bond immediately under that rule.

Nor do we construe Rule 24.1(e) to enlarge the scope of trial court jurisdiction after plenary power expires beyond what is prescribed by Rule 24.3(a). Rule 24.1(e) generally authorizes trial courts to protect judgment creditors against loss or harm without distinguishing what protections a trial court can order before and after plenary power expires. If Rule 24.1(e) authorized trial courts to make orders after plenary power expires that are not permitted under Rule 24.3(a), then Rule 24.3(a) would cease to have any meaning.

The only way to preserve meaning for both Rule 24.3(a) and Rule 24.1(e) is to construe Rule 24.3(a) as a list of limited bases for continuing jurisdiction regarding supersedeas matters after plenary power expires. *See Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("When possible, we construe language in a way that does not render any of it meaningless."); *see also In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015) (explaining that the same rules of construction that govern the interpretation of statutes apply to procedural rules). Rule 24.1(e) does not confer continuing jurisdiction beyond the limited bases provided in Rule 24.3(a), and we therefore hold that Rule 24.1(e) did not authorize the trial court's order invalidating the Greystar Entities' joint bond after plenary power expired.

We note that no subpart of Rule 24 addresses how long parties have to remedy a bond found insufficient under Section 52.006(b)(2) before facing execution, although it prescribes 20-day windows following

31

trial court net-worth determinations or bond modifications by courts of appeals. *See* TEX. R. APP. P. 24.2(c)(2), 24.4(e). This gap leaves the issue to the trial court's discretion, and we view it as an abuse of discretion not to allow a reasonable time to comply with the trial court's ruling. Considering the 20-day windows to remedy an insufficient bond in other parts of Rule 24, we conclude that parties should presumptively be allowed 20 days to fix a bond found insufficient under Section 52.006(b)(2). Trial courts have some discretion to shorten or lengthen this time as appropriate in a particular case.

## CONCLUSION

We hold that the trial court clearly abused its discretion by immediately invalidating the Greystar Entities' joint bond as to two of the entities without providing any time for each entity to post a bond in a sufficient amount. Accordingly, we conditionally grant mandamus relief in part and direct the trial court to provide Greystar Development & Construction, LP—Gabriella Tower Contractor Series and Gabriella Tower, LLC a reasonable time to post sufficient bonds under Section 52.006(b)(2)'s per-debtor cap. We are confident that the court will comply, and the writ will issue only if it does not.

J. Brett Busby
Justice

**OPINION DELIVERED:** May 22, 2026

32